[No. 7752–0–I.   Division One.   September 15, 1980.]

JOHN STRACHAN, ET AL, *Appellants,* v. KITSAP COUNTY, *Respondent.*

*Olwell, Boyle & Hattrup, Lee Olwell, McKisson, Lehne & Associates,* and *Robert McKisson,* for appellants.

*Craig Campbell, David Swartling, Thomas V. Harris, H. J. Merrick, Richard J. Glein, Lane, Powell, Moss & Miller,* and *Barry Johnson,* for respondent.

JAMES, J.—Plaintiff, John Strachan, brought this action against defendants Kitsap County, the City of Poulsbo, and Mark Christensen. He appeals the granting of summary judgment of dismissal in favor of defendant, Kitsap County. We affirm in part, but reverse.

Christensen, a City of Poulsbo police officer, accidentally shot and injured Strachan, a Kitsap County deputy sheriff. At the time of the shooting, Strachan was on duty. Christensen had completed his regular shift as a Poulsbo policeman and had been assisting Strachan in performing county police duties the evening of the accident.

Strachan contends, first, that Kitsap County is vicariously liable for Christensen's negligence through the doctrine of respondeat superior and, second, primarily liable for its own negligence in utilizing Christensen's services without insuring he had sufficient training in the use and handling of firearms.

A motion for summary judgment should be granted only if there are no material issues of fact and the moving party

is entitled to judgment as a matter of law. CR 56(c); *Morris v. McNicol,* 83 Wn.2d 491, 519 P.2d 7 (1974).

■ Kitsap County first argues that because Christensen had not been issued a special deputy sheriff commission card, no agency relationship existed as a matter of law. Kitsap County points out that RCW 36.28.020, which authorizes the commissioning of deputy sheriffs, requires they be "deputed by the sheriff in writing," and that although other Poulsbo police officers had been formally deputized, Christensen had not. Kitsap County's argument, however, fails to recognize RCW 36.28.010(6), which provides that in apprehending or securing any person for a felony or breach of the peace, "[the sheriff and his deputies] may call to their aid such persons, . . . as they may deem necessary." When considered in the light most favorable to Strachan, the evidence establishes that Christensen was assisting Strachan in the performance of police duties on the evening of the shooting and that he had assisted Kitsap County's deputy sheriffs on numerous prior occasions. The fact that Christensen had failed to obtain a deputy sheriff's card does not preclude finding an agency relationship. The statute expressly authorizes deputy sheriffs to enlist the aid of *any* person.

Kitsap County further contends that even if an agency relationship could have been established without written authorization, the evidence would not support a finding that Christensen was an agent in fact. No supervisory personnel knew he was assisting Strachan and he was free to leave at any time. These factors, it contends, conclusively establish lack of control. We do not agree.

■ Undisputed evidence established that various municipal police officers routinely assisted Kitsap County's deputy sheriffs and on such occasions the county officers controlled the municipal officers' performance. When viewed in the light most favorable to Strachan, the affidavits and depositions would support a finding that Christensen had volunteered and Strachan had accepted Christensen's offer of assistance. As stated in *Baxter v.*

*Morningside, Inc.,* 10 Wn. App. 893, 895–97, 521 P.2d 946 (1974),

> In this regard, it may be emphasized that it is not de facto control nor actual exercise of a right to interfere with or direct the work which constitutes the test, but rather, the *right to control* the negligent actor's physical conduct in the performance of the service. . . .
> . . . We believe the rule to be that where one volunteers or agrees to assist another, to do something for the other's benefit, or to submit himself to the control of the other, even without an agreement for or expectation of reward, if the one for whom the service is rendered consents to its being performed under his direction and control, then the service may be rendered within the scope of a master–servant relationship. . . .

Christensen's claimed agency status was a question of fact.

Kitsap County next contends that even if an issue of material fact existed as to whether the requisite agency relationship was present, Christensen's act in shooting Strachan was outside the scope of his agency as a matter of law. We agree.

Christensen testified that his actions at the time of the shooting "had nothing to do with law enforcement" and that he was engaging in "horseplay." The record provides no evidence or reasonable inference which would support a finding that Christensen's act was within the scope of his agency.

■ Our Supreme Court has stated:

> "The test adopted by this court for determining whether an employee is, at a given time, *in the course of his employment,* is whether the employee was, at the time, engaged in the performance of the duties required of him by his contract of employment, *or* by specific direction of his employer; *or,* as sometimes stated, *whether he was engaged at the time in the furtherance of the employer's interest.*"

*Elder v. Cisco Constr. Co.,* 52 Wn.2d 241, 245, 324 P.2d 1082 (1958), quoting *Greene v. St. Paul–Mercury Indem. Co.,* 51 Wn.2d 569, 573, 320 P.2d 311 (1958). While "scope of employment" is normally a jury question, where there

can be only one reasonable inference from the undisputed facts, the issue may be resolved via summary judgment.

When a police officer commits a willful and intentional assault, his governmental employer is not liable. *Kyreacos v. Smith,* 89 Wn.2d 425, 572 P.2d 723 (1977). In this case, although the shooting cannot be characterized as an intentional assault, we believe the same reasoning applies. By engaging in horseplay with a loaded handgun, Christensen stepped "aside from his master's business." *Kyreacos v. Smith, supra* at 429. *See District of Columbia v. Davis,* 386 A.2d 1195, 1204 n.10 (D.C. 1978). No evidence or reasonable inference exists that Christensen drew the weapon in furtherance of any conceivable law enforcement purpose. *See Olson v. Staggs–Bilt Homes, Inc.,* 23 Ariz. App. 574, 534 P.2d 1073 (1975).

We are aware that for industrial insurance purposes minor acts of horseplay have been held to fall within the course of employment. *Tilly v. Department of Labor & Indus.,* 52 Wn.2d 148, 324 P.2d 432 (1958). *See also* 1A A. Larson, *Workmen's Compensation* §§ 23.00 *et seq.* (1979). Rules established in such cases, however, are not generally applicable to tort issues because "[t]he basic purpose for which the rules of vicarious liability were used at common law is different from the purpose of the rules used in compensation law." *Fisher v. Seattle,* 62 Wn.2d 800, 803–04, 384 P.2d 852 (1963). To effectuate the legislative intent to provide compensation to injured workers without regard to fault, courts have broadly construed the statutory term "course of employment." RCW 51.08.013. *See generally* 1 A. Larson, *Workmen's Compensation,* ch. 1 (1978). Imposition of vicarious tort liability, however, is based on common law negligence principles which do not require a broad construction of the term. We conclude, therefore, that the rationale of *Tilly* is inapplicable in this case.

Kitsap County's final contention is that no issue of material fact exists concerning Kitsap County's primary liability for failing to require that Christensen had adequate firearm training. Kitsap County first argues that

absent actual or constructive notice of Christensen's dangerous propensities, no direct liability can result. Second, Kitsap County asserts that the duty to train, if one existed, was solely that of the City of Poulsbo and not the County's. We do not agree.

■ Municipalities have a duty to insure their police officers receive adequate training in the handling of firearms.

> Loaded revolvers are dangerous instruments. Their potentiality for infliction of serious injury is such that the law has imposed a duty to employ "extraordinary" care in their handling and use. . . . [T]his court [has] quoted with apparent approval the *dictum* of Judge Cardozo in *Palsgraf v. Long Island R. Co.,* 248 N. Y. 339, 162 N. E. 99, 100, 59 A. L. R. 1253 (*Ct. App.* 1928) that:
> "Some acts, such as shooting are so imminently dangerous to any one who may come within reach of the missile however unexpectedly, as to impose a duty of prevision not far from that of an insurer." . . .
> Municipal entities must take cognizance of the hazard of sidearms. That knowledge casts an obligation on them when they arm or sanction the arming of reserve patrolmen for active police duty. The obligation is to use care commensurate with the risk to see to it that such persons are adequately trained or experienced in the proper handling and use of the weapons they are to carry. If the official in general authority in the police department sends or permits a reserve officer to go out on police duty without such training or experience, his action is one of negligent commission—of active wrongdoing—, and if an injury results from an unjustified . . . or negligent shooting by that officer in the course of performance of his duty, which is chargeable to the lack of training or experience, the municipality is liable.

(Citations omitted.) *McAndrew v. Mularchuk,* 33 N.J. 172, 183–84, 162 A.2d 820 (1960). As we have concluded, the evidence would permit a finding that Christensen was an agent of Kitsap County. He was performing police functions and carrying a firearm for that purpose. The County was, therefore, obligated to insure that he was "adequately trained or experienced in the proper handling and use" of

firearms. *McAndrew v. Mularchuk, supra* at 184. *See* Restatement (Second) of Agency § 214, comment *c* at 464 (1958); 18 E. McQuillin, *Municipal Corporations* § 53.80c (3d rev. ed. 1977).

Strachan presented testimony of an expert in firearms training that had Christensen received adequate firearms training, this incident would not have occurred. When viewed in the light most favorable to Strachan, issues of material fact exist as to whether the County breached its duty to train and whether the County's breach was a proximate cause of the injury. *Cf. District of Columbia v. Davis, supra* (expert testimony concerning standard of care and proximate cause required to support allegation of municipality's failure to provide adequate firearms training). Even though Christensen's aberrational act was beyond the scope of his employment, whether it was a proximate result of Kitsap County's alleged negligence in failing to require firearms instruction is also a question of fact. *Cf. Snell v. Murray*, 121 N.J. Super. 215, 296 A.2d 538 (1972) (no proof of inadequate training or proximate cause).

Issues of material fact exist both as to Christensen's agency status and the County's alleged direct negligence regarding firearms training. The trial judge, therefore, erroneously granted Kitsap County's motion for summary judgment of dismissal.

Reversed and remanded for proceedings in accordance herewith.

CALLOW, C.J., and DURHAM–DIVELBISS, J., concur.

Reconsideration denied October 9, 1980.

Review denied by Supreme Court December 19, 1980.