Jean and Vernon RAUCH, Employers Mutual Casualty Company and Conservco, Constitution Service Company, Plaintiffs-Appellants,

v.

OFFICINE CURIONI, S.P.A. and AA Insurance Company (by fictitious name), Defendants,

Therman ANDERSON and BB Insurance Company, (n/k/a Employers of Des Moines), Defendants-Respondents.†

Court of Appeals

*No. 92–3105–FT. Submitted on briefs March 31, 1993.—Decided October 5, 1993.*

(Also reported in 508 N.W.2d 12.)

†Petition to review denied.

For the plaintiffs-appellants the cause was submitted on the briefs of *Warshafsky, Rotter, Tarnoff, Gesler, Reinhardt & Bloch, S.C.*, with *Victor C. Harding*, of counsel, of Milwaukee.

For the defendants-respondents the cause was submitted on the briefs of *Kasdorf, Lewis & Swietlik, S.C.*, with *Terrance E. Davczyk* and *Michael S. Murray*, of counsel, of Milwaukee.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

SCHUDSON, J. Jean and Vernon Rauch, Employers Mutual Casualty Company, and Conservco Inc. (collectively "Rauch"), appeal from a summary judgment in favor of Therman Anderson. The issue is whether the exclusive remedy provision of the Worker's Compensation Act, sec. 102.03(2), Stats., precludes Rauch's claim against Anderson, the owner/lessor of the boxmaking machine that allegedly caused Jean Rauch's injury during her employment at Badger Packaging Corporation ("Badger"), because of Anderson's status as President, Chief Executive Officer and 85% owner of Badger. We conclude that Anderson held a "dual persona" and, therefore, Rauch's claim was not precluded by the Worker's Compensation Act. Accordingly, we reverse.

According to the pleadings and affidavits, at all times relevant to this case Anderson was the 85% stockholder and CEO of Badger. In January 1989, he purchased a cutter/press boxmaking machine manufactured by Officine Curioni. By a written lease agreement dated March 1, 1989, Anderson leased the

machine to Badger for eighty-four months for $450 per month. The lease agreement named Anderson as "LESSOR" and Badger as "CUSTOMER."

Jean Rauch claimed that on June 28, 1990, she suffered extensive injuries when her hand was drawn into the machine at Badger where she was employed. She, her husband, and her worker's compensation carriers brought strict liability and negligence claims against the manufacturer, Anderson, and their general liability insurers (by a fictitious name). Anderson moved for summary judgment, contending that as CEO of Badger, he was Rauch's employer and thus was shielded from tort liability under the exclusive remedy provision of the Worker's Compensation Act. The trial court granted Anderson's summary judgment motion and dismissed him from the case.

On review of a summary judgment order, we employ the same methodology as the trial court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987). We first examine the pleadings to determine whether a claim for relief has been stated. *Id.* If a claim for relief has been stated, we then determine whether any factual issues exist. *Id.* If there is no genuine issue as to any material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the trial court order granting summary judgment. *Id.*

The exclusive remedy provision of the Worker's Compensation Act provides that "the right to the recovery of compensation under this chapter shall be the exclusive remedy [an employe has] against the employer, any other employe of the same employer and the worker's compensation insurance carrier." Section

102.03(2), Stats. Nevertheless, under the doctrine of "dual persona," an employer may be liable in tort to an employee where the employer acts as a third person, rather than as the employer. As we explained, " 'An employer may become a third person, vulnerable to tort suit by an employee, if — and only if — he [or she] possesses a second persona so completely independent from and unrelated to his [or her] status as employer that by established standards the law recognizes it as a separate legal person.' " *Schweiner v. Hartford Accident & Indem. Co.*, 120 Wis. 2d 344, 352, 354 N.W.2d 767, 772 (Ct. App. 1984) (citation omitted).

The question for this court, therefore, is whether Anderson, as owner/lessor of the machine and as President, CEO and 85% owner of Badger, was two "separate legal person[s]" according to "established standards the law recognizes." *Id*. According to his affidavit, Anderson purchased the boxmaker and leased it to Badger. Although he said that his decisions "[i]n the purchase and lease of equipment to Badger" were based on his "knowledge of the needs and operations of Badger," Anderson never stated that his purchase and lease of this machine were accomplished in his corporate or employment capacity.

Thus, based on Anderson's affidavit, the trial court correctly concluded that Anderson "personally purchased" the machine. The trial court, however, then stated that Anderson "was acting in his capacity as president when he purchased the [boxmaker]." Nothing in the record supports that latter characterization. Nothing in the pleadings, lease agreement, or affidavits suggests, in any way, that Anderson's decision to purchase and lease the machine was done in a corporate capacity. Indeed, drawing logical inferences based on "established standards the law recognizes," the

purchase and lease decisions derived, apparently, from Anderson's decision to assure that a separate, legal status supported his personal ownership of and rental income from the machine.

Anderson contends that *Gerger v. Campbell*, 98 Wis. 2d 282, 297 N.W.2d 183 (1980), supports his position that, acting within his capacity as an employer of Rauch and as an employee of Badger, he was immunized from separate individual tort liability in owning and leasing the machine. In *Gerger*, however, the supreme court considered the "dual capacity" doctrine and specifically stated that it did not apply because Campbell, the owner and lessor of a machine that caused injury to Gerger, was "acting not as the owner of the equipment or as the lessor, but as the employer" when he negligently modified the machine. *Gerger*, 98 Wis. 2d at 293, 297 N.W.2d at 188.

> The crucial fact here had nothing to do with whether Northern owned the machinery or whether Campbell did. The crucial fact was that Campbell, as an officer of the corporation, in respect to the obligations he had to his corporate employer, modified the machine. Under such circumstances the dual capacity test is not implicated. The function which Campbell performed negligently was directly related to the duty of the employer to furnish equipment and machinery for the employee. It had no functional relationship whatsoever with whether Campbell was the owner and lessor of the equipment. *We do not conclude that the dual capacity doctrine may not appropriately circumvent the immunity under the exclusive-remedy test in a proper case, but this is not such a case.*

*Id.* (emphasis added). Thus, *Gerger* is distinguishable.

Although Wisconsin appellate courts have not directly addressed the issue in this case,[1] the Illinois Supreme Court has decided a comparable question. In *Smith v. Metropolitan Sanitary District*, 396 N.E.2d 524 (Ill. 1979),[2] Smith, an employee of a joint venture, brought an action against one of the members of the joint venture for injuries sustained when he was struck by a defective truck leased by the joint venture member to the joint venture. The Illinois Supreme Court held that the joint venturer should not be shielded from liability when leasing a defective product that injures an employee.

> [P]laintiff's right to bring this action should not depend upon whether the truck which struck him was leased to his employer by one of its members [of

---

[1] In *Couillard v. Van Ess*, 152 Wis. 2d 62, 447 N.W.2d 391 (Ct. App. 1989), this court held that the exclusive remedy provision of the Worker's Compensation Act did not bar a plaintiff's separate tort action against a lessor/employer. We did not, however, decide that case under the dual persona doctrine. *See id.* at 66, 447 N.W.2d at 393. Therefore, because *Couillard* is not controlling on this issue, we address the applicability of the dual persona doctrine in this case.

[2] *Smith*, like *Gerger*, discussed the "dual capacity" doctrine. In *Henning v. General Motors Assembly Div.*, 143 Wis. 2d 1, 15, 419 N.W.2d 551, 556-57 (1988), the Wisconsin Supreme Court adopted the narrower dual *persona* test and differentiated it from the broader dual *capacity* doctrine. The supreme court explained, "we adopt the dual *persona* standard, not as a definitional limitation upon the dual capacity doctrine, but as the doctrine substituted for what had previously been articulated as the dual capacity test." *Id.*, 143 Wis. 2d at 22, 419 N.W.2d at 559. Although the rationale in *Smith* was articulated under the "dual capacity" doctrine, we conclude that *Smith*, nevertheless, is equally applicable to this case.

> the joint venture] or by a lessor with no other rela-
> tionship to the joint-venture employer. Likewise, . . .
> defendant's liability as a lessor of equipment should
> not be dependent upon whether it was solely a les-
> sor or occupied the coincidental status of a member
> of the joint venture.

*Id.* at 528.

Similarly, we conclude that the viability of Rauch's claim does not depend upon whether the machine was leased to Badger by its president, independent of his corporate connection; by its employee, independent of his employment; or by a person unaffiliated with Badger. Anderson, personally purchasing and leasing the machine, does not escape potential tort liability simply because he also was an employee, majority stockholder, president, or CEO of Badger.

■

An owner/lessor may be liable for furnishing equipment that injures a user of that equipment. *See Kemp v. Miller*, 154 Wis. 2d 538, 558, 453 N.W.2d 872, 878 (1990). According to the pleadings and affidavits in this case, Anderson was the owner/lessor of the boxmaking machine that allegedly caused Rauch's injury. Having created the legal entity separate from Badger to own and lease the machine, and having accepted the personal advantages derived from such an arrangement, Anderson cannot shed that separate legal status when it works to his disadvantage. *See Jonas v. State*, 19 Wis. 2d 638, 644, 121 N.W.2d 235, 239 (1963) (those who create an entity in order to enjoy the advantages flowing from its existence as a separate entity cannot ask that such existence be disregarded where it works to disadvantage them).

As we explained, "the legislature never intended the Worker's Compensation Act to immunize the employer from liability for obligations arising from a source other than its role as an employer." *Schweiner*, 120 Wis. 2d at 354, 354 N.W.2d at 773. We conclude that Anderson acted with "a second persona[,] so completely independent from and unrelated to his status as employer" or co-employee. *See Schweiner*, 120 Wis. 2d at 352, 354 N.W.2d at 772. Accordingly, we reverse the summary judgment of the trial court and remand for further proceedings consistent with this opinion.

*By the Court.*—Judgment reversed and cause remanded.