[No. 60186-1.   En Banc.   September 1, 1994.]

DIANE EVANS, *Individually and as Personal Representative*, ET AL, *Petitioners*, v. ROBERT J. THOMPSON, ET AL, *Respondents*.

*Paul L. Stritmatter* and *Stritmatter, Kessler & McCauley*, for petitioners.

*Lee, Smart, Cook, Martin & Patterson, P.S., Inc.*, by *David L. Martin* and *Gregory P. Turner*, for respondents.

BRACHTENBACH, J. — This action arises from the deaths of Frederick I. Evans and Daniel J. Kanning. Their widows sued individually and as representatives of the respective estates. The decedents were employees of Santana Trucking & Excavating, Inc. Defendants, Robert J. and Amber D. Thompson, husband and wife, are the shareholders, officers and directors of Santana.

Defendants, as individuals, own real property on which Santana dumped fill materials. A storm drain system on the property included a 20-foot-deep manhole. Decedents and a third Santana employee were on the property to inspect the drain system. Evans dropped a calculator into the manhole. He proceeded down the manhole, but did not return. Kanning went after Evans. Both died from methane gas accumulated at the bottom of the manhole.

Plaintiffs' complaint alleges a breach of the duties owed by Defendants as owners of the real property, specifically: "The injuries and deaths . . . were proximately caused by the concealed (latent) ultrahazardous condition of Defendants' property." Clerk's Papers, at 6. Defendants moved for summary judgment on the basis that Plaintiffs' claims were barred by the Industrial Insurance Act because the Defendants and decedents were in the "same employ". Therefore, Defendants claim the third party action against Defendants as individual landowners is not authorized by the third party statute, RCW 51.24.030(1). The trial court granted summary judgment to Defendants; the Court of Appeals affirmed in an unpublished opinion. We reverse and remand.

Two questions are presented: (1) When the defendants are landowners and constitute a completely separate legal entity from the employer of a worker, are the defendants immune under the Industrial Insurance Act for breach of their duties as landowners?; and (2) Are the officers and directors of a corporate employer immune, *as a matter of law*, as coemployees of a person employed by the corporation, even though at least one of the officers and directors is not employed by the corporation and performs no duties for the corporation?

The Legislature has provided for a third party action: "If a third person, not in a worker's same employ, is or may become liable to pay damages on account of a worker's injury . . . the injured worker or beneficiary may elect to seek damages from the third person." RCW 51.24.030(1). The Legislature evidences a strong policy *in favor* of actions against third parties by assigning the cause of action to the Department of Labor and Industries if the workman elects not to bring a third party suit. RCW 51.24.050(1). The interest of the Department in reimbursement from the recovery from a third party, RCW 51.24.040, clearly supports that policy. These legislative declarations mandate policy decisions by the courts which give appropriate recognition to the third party action.

The deceased workers in this case were employed by a corporation. Plaintiffs do not sue that corporation. Rather they sue an entirely separate legal entity, legally cognizable, Defendants, husband and wife, as individuals.

These Defendants, as a legal entity entirely separate from the corporation, own the real property upon which the deceased workers met their deaths, allegedly from conditions of that real estate. Decedents are alleged to be invitees. As such, they may be owed well-established duties from Defendant husband and from Defendant wife, as landowners.

Under our holdings, the Plaintiffs do not necessarily recover. Rather, we hold that there are genuine issues of material fact as to whether Defendants, particularly Defendant wife, were in fact coemployees of the decedents. There are issues of law as to what Defendants' duties are as landowners and factual issues as to whether those duties were breached. These latter issues are not briefed, apparently by mutual agreement.

Defendants, *as individuals*, acquired title to these several parcels, where the deaths occurred, for investment purposes. Clerk's Papers, at 88, 90-92. They, *as individuals*, paid $91,000 to $94,000 for several parcels. They, *as individuals*, owe some contract balance on one parcel. The contract payments are made by the corporation, but recognizing and claiming their separate capacity, they, *as individuals*, show that as income in their *personal* tax returns. Clerk's Papers, at 81-82, 88, 91.

Defendants, *as individuals*, list the property as their residence address (which it is not) to qualify their children for a certain school. Clerk's Papers, at 97. Defendant husband lists the property as his home address on his driver's license. Clerk's Papers, at 99. A construction permit and a grading permit were obtained by Defendants, *as individuals*, for work on the property, again listing the property as their residence address. Clerk's Papers, at 74, 100. Defendants, *as individuals*, pay the real estate taxes, thereby gaining a tax benefit, *as individuals*. Clerk's Papers, at 82. They plan ulti-

mately to use the property for purposes entirely unconnected to the corporation. Clerk's Papers, at 78-80.

In short, the Defendants, *as individuals*, as a legal entity entirely separate from the corporation-employer, own the property. They have paid for most of it *as individuals* and recognize the corporation payments as individual income. They, *as individuals*, obtain the tax benefits of ownership. They falsely represent to the state and a school district that this property is their residence. There is no written lease or other agreement between Defendants and the corporation. Clerk's Papers, at 79-80.

Can Defendants, as a separate legal entity, or either of them, be liable as landowners owing duties to the decedents as invitees? More accurately, are there genuine issues of material fact about the relationships between the corporation-employer, the decedents and the Defendants, as a separate legal entity, or either of them?

There are cases in other jurisdictions supporting the Plaintiffs' theory. Directly in point is *Perkins v. Scott*, 554 So. 2d 1220 (Fla. Dist. Ct. App. 1990). The facts are remarkably similar. The plaintiff worked for a corporation, S&S Pro Color, Inc. He worked in a building owned by Mr. Scott and his wife (same as here). The Scotts were the sole shareholders of S&S Color, Inc. (same as here). Mr. Scott was the president of the corporation (same as here). Plaintiff was injured when he fell down a stairway at his place of employment (same type incident as here). Plaintiff received worker compensation benefits, but sued Scott in his capacity as landlord (same as here). The court noted:

> Mr. Scott argues that he is entitled to workers' compensation immunity based either on his status as a coemployee, or on a theory that he is entitled to pierce his corporation's veil and receive its workers' compensation immunity [same as here]. We reject both arguments.

*Perkins*, at 1221.

The court's reasoning in *Perkins* is compelling:

> If Mr. Scott has in fact retained duties, as the owner of the building, separate and distinct from his duties as an employee

of S & S Pro Color, fellow-employee immunity provides no protection for negligent breaches of those duties. . . .

. . . Having created a separate corporation to employ Mr. Perkins and having leased the building to that corporation, Mr. Scott does not have the luxury to now pierce the veil of his own corporation to receive the benefit of its immunity. . . . If Mr. Scott were sued by a third party who had been injured by an employee of S & S Pro Color in the scope and course of the employee's employment, it is clear that Mr. Scott would raise the corporate veil to protect his individual assets. Mr. Scott is not free to raise the corporate veil to block liability and yet lower it to receive immunity.

(Citation omitted.) *Perkins*, at 1221-22.

*Doggett v. Patrick*, 197 Ga. App. 420, 398 S.E.2d 770 (1990) is in point. There the plaintiff was injured in the course of his employment, allegedly due to the condition of the building leased by his employer, but owned by the defendant, individually, who was the president of the corporate employer (same as here). Plaintiff received workers' compensation benefits, but sued defendant as the landowner (same as here). In reversing a summary judgment in favor of the landowner, the court cited Professor Larson's text. The court in *Doggett* said:

Pursuant to that doctrine, " '(a)n employer may become a third person, vulnerable to tort suit by an employee, if — and only if — he possesses a second persona so completely independent from and unrelated to his status as employer that by established standards the law recognizes it as a separate legal person.' Larson's Workmen's Compensation Law, § 72.81, Vol. 2A."

*Doggett*, at 421 (quoting *Porter v. Beloit Corp.*, 194 Ga. App. 591, 593, 391 S.E.2d 430 (quoting 2A Arthur Larson, *Workmen's Compensation* § 72.81 (1988), *cert. denied*, 194 Ga. App. 912 (1990). The court also noted:

The premises were not owned in this case by the corporation-employer but by defendant Patrick in his individual capacity [same as here]. . . . Thus, at least an issue of fact is presented concerning whether the duties imposed upon defendant as a landowner are separate from those imposed upon him as a representative of plaintiffs employer.

*Doggett*, at 421.

In *Corr v. Willamette Indus., Inc.*, 105 Wn.2d 217, 221-23, 713 P.2d 92 (1986), we quoted Larson (as quoted in *Doggett v. Patrick, supra*) and stated we might apply the dual persona doctrine in the proper case. This is that proper case.

Also, supporting our holding is *Miller v. Massullo*, 172 Mich. App. 752, 432 N.W.2d 429 (1988), *appeal denied*, 433 Mich. 879 (1989). Plaintiff was an employee of a corporation. Defendant was the president and principal shareholder of the corporate employer (same as here). Defendant leased a tractor-trailer to the corporation (same principle as here). Plaintiff was injured in the course of employment by the corporation. Defendant claimed immunity as a coemployee (same as here). Defendant won a summary judgment based on that immunity (same as here). The court reversed. After quoting the same passage from Larson as did the *Doggett* court, the Michigan court held:

> Our review of the record persuades us that defendant was not entitled to summary disposition. Defendant was the owner of the tractor-trailer and had leased the vehicle to Chem-Bright [the employer of both]. Defendant received rental income under the lease and, as the owner, was expressly entitled to the tax benefits of depreciation and the investment [tax] credit on his personal income tax return. We are unconvinced that plaintiff would not have been able to show at trial that defendant's act of leasing the vehicle to his employer was independent of, and not related to, the common employment of both, and thereby defeat defendant's claim of immunity . . ..

(Citation omitted.) *Miller*, at 760.

In *LaBelle v. Crepeau*, 593 A.2d 653 (Me. 1991), the trial court ruled that the defendant, who was also the major shareholder, president, and treasurer of the corporate employer, had workers' compensation act immunity. The Supreme Court reversed even though the Maine statute specifically granted immunity to officers and directors (which the Washington statute does not) as well as coemployees. The court correctly held:

> Defendant, however, was not sued in his capacity as employee or corporate officer. Rather, he was sued individually as the owner of premises he leased to a separate corporate entity,

solely for failure to conform to an alleged legal duty on the part of a landlord to assure the safety of the premises.

*LaBelle*, at 655. The facts are similar to those in this case.

Equally supportive is *Rauch v. Officine Curioni, S.p.A.*, 179 Wis. 2d 539, 508 N.W.2d 12 (Ct. App. 1993), *review denied*, 513 N.W.2d 406 (1994), where an employee had been injured in the course of her employment. The defendant was the president, chief executive officer and majority owner of the corporation which employed plaintiff. The defendant had individually purchased a machine and leased it to the corporate employer (same principle as here). The trial court granted immunity to defendant. The court reversed, holding:

> [Defendant] personally purchasing and leasing the machine, does not escape potential tort liability simply because he also was an employee, majority stockholder, president, or CEO of [the corporate employer].
>
> . . . Having created the legal entity separate from [the corporate employer] to own and lease the machine, and having accepted the personal advantages derived from such an arrangement, [defendant] cannot shed that separate legal status when it works to his disadvantage.

(Citation omitted.) *Rauch*, at 546. The court quoted from *Schweiner v. Hartford Accident & Indem. Co.*, 120 Wis. 2d 344, 352, 354 N.W.2d 767, 772 (Ct. App. 1984): " '[T]he legislature never intended the Worker's Compensation Act to immunize the employer from liability for obligations arising from a source other than its role as an employer.' " *Rauch*, at 547.

In *Fern v. Ussler*, 428 Pa. Super. 210, 630 A.2d 896 (1993), the employee was a corporate employee, injured by an allegedly defective condition of a building leased to the corporate employer by the defendants. The defendants, husband and wife, were the president and manager and secretary-treasurer of the corporate employer (same as here). The wife, secretary-treasurer, had no duties in relation to the leased building (same as here). The trial court granted immunity. The court reversed, holding: "Hence, the mere fact that both individuals held positions of employment with the same employer at the time of the act or omission is not sufficient to show that they were in the 'same employ' at

the time of the act or omission." *Fern*, at 898-99. The court held that it was for the trier of fact, not the appellate court, to determine whether the defendants had duties relating to the condition of the leased building.

Larson's text makes this generalized statement: "It is held with virtual unanimity that an employer cannot be sued as the owner or occupier of land[.]" 2A Arthur Larson, *Workmen's Compensation* § 72.82 (1988). However, this general statement refers to the situation where the entity which is the employer is also the same entity which owns the land. Thus, the injured worker cannot try to split a single legal entity into separate parts. The authorities cited by Larson make clear that the quotation does not support application of his generalization under our facts.

For example, in support of the quoted generalization, Larson cites *Carey v. Coca-Cola Bottling Co.*, 48 Ill. App. 3d 482, 363 N.E.2d 400 (1977). Larson notes that the defendant "was but one legal entity, an owner-employer." 2A Arthur Larson, *Workmen's Compensation* § 72.82 n.15, at 14-247 (1988). Larson then cites cases which draw the very distinction applicable here, *i.e.*, where in fact there are separate legal entities as the employer and as the owner of the premises, action is not barred. For example, an employer was one of three partners in a general partnership. The general partnership was responsible for the parking lot where plaintiff was injured. Plaintiff sued the general partnership, as a third party; the general partnership claimed immunity because the employer was one of its members. Summary judgment for defendant was reversed because there was an issue of fact whether the partnership was a third party. *Salswedel v. Enerpharm, Ltd.*, 107 N.M. 728, 764 P.2d 499 (Ct. App. 1988).

Larson also cites *Senken v. Eklund*, 146 Misc. 2d 811, 552 N.Y.S.2d 490 (Sup. Ct. 1990), which is of particular interest. The injured worker was employed by a partnership to work on a house owned by a partner and his wife. The husband, as a partner-employer, had immunity, but the wife, as a landowner with separate duties, did not. Larson also cites

*Karadanis v. Sourwine*, 105 Nev. 793, 783 P.2d 454 (1989). In that case there was no immunity for the premises owner, which involved many of the same individuals who owned the employer, but was a totally separate partnership. 2A Larson § 72.82, at 182 (Supp. 1990).

In *Couillard v. Van Ess*, 152 Wis. 2d 62, 447 N.W.2d 391 (Ct. App.), *review denied*, 451 N.W.2d 298 (1989), the estate of a killed worker sued the owners of the building. Like this case, the owners of the building were the shareholders and officers of the corporate employer. The court held it was not necessary to invoke the dual persona doctrine because of the legal distinction between the corporate employer and the separate legal entity which owned the building and leased it to the employer. The case is direct authority here.

Next, we turn to the second issue. The requirement is (1) that *each defendant* must be in the same employ as the decedents and (2) that *each defendant* was acting in the scope and course of his or her employment.

The applicable rule is clear and well established: "If both employees have a common employer but the negligent employee is not acting in the course of his employment at the time the injury occurs, he is not immune from suit. *Olson v. Stern*, 65 Wn.2d 871, 400 P.2d 305 (1965)." *Taylor v. Cady*, 18 Wn. App. 204, 206, 566 P.2d 987 (1977). Usually it is a question for the jury whether an employee was acting within the scope of employment. *Strachan v. Kitsap Cy.*, 27 Wn. App. 271, 274, 616 P.2d 1251, *review denied*, 94 Wn.2d 1025 (1980). Of course, this is the general rule. "It must be observed that the *immunity attaches* to the coemployee *only* when the coemployee is acting in the course of his employment." (Footnote omitted. Italics ours.) 2A Arthur Larson, *Workmen's Compensation* § 72.23, at 14-117 (1987).

Further, the burden is on the Defendants to establish their claimed immunity as coemployees. CR 8(c); *Superior Asphalt & Concrete Co. v. Department of Labor & Indus.*, 19 Wn. App. 800, 804, 578 P.2d 59, *review denied*, 90 Wn.2d 1022 (1978).

First, as to the Defendant wife, it is not possible on this record to make the required findings to support immunity as

a matter of law. (1) The wife was not employed by the corporation. (2) The wife had no duties for the corporation. (3) The wife performed no services for the corporation. (4) The wife received no wages or any form of compensation from the corporation. Since she had no job and no duties, it necessarily follows that she could not be acting in the scope and course of a nonexistent employment.

The picture is less clear as to the husband. But bearing in mind the Defendants' burden to prove their affirmative defense of immunity, they fail to meet the standards for summary judgment. They failed to provide any evidence of the husband's actual duties for the corporation, including whether he directed the day-to-day operations of the corporation. It is established that he was not involved in any way in directing decedents to the property where they were killed. Clerk's Papers, at 93. Thus, it is unknown what Defendant husband's duties were in relation to the corporate business or to the particular event. There remain genuine issues of material fact thereon.

To overcome the fact that Defendant wife was not in fact an employee and had no corporate duties, and that the scope and nature of the husband's duties are unknown, the Defendants argue *as a matter of law*, the individual Defendants are (1) corporate employees and (2) necessarily acting within the scope and course of their corporate employment.

In reality, the nature and scope of the duties of a director and an officer are defined in the corporate bylaws. None is in the record. The controlling statute provides that a corporation may *dispense* with or limit the authority of its directors and prescribe who will perform some or *all* of the duties of its directors. RCW 23B.08.010(3).

The Defendants contend that two Court of Appeals cases support its holding that officers and directors are by definition corporate employees. In fact, neither is persuasive and both clearly are distinguishable.

First is *Peterick v. State*, 22 Wn. App. 163, 190, 589 P.2d 250 (1977), *review denied*, 90 Wn.2d 1024 (1978), *overruled on other grounds by Stenberg v. Pacific Power & Light Co.*,

104 Wn.2d 710, 719, 709 P.2d 793 (1985). The opinion is not entirely clear, but it appears the sued officers and directors were *in fact* corporate employees. The defendants' brief in *Peterick* specifically refers to those officers and directors being employed by the corporation. Br. of Resp't, at 37-38. The *Peterick* opinion makes no analysis of the issue, but only asserts its conclusion without consideration of the facts. Contrast this case where at least Defendant wife is not a corporate employee and the husband's status is unknown.

The second case relied on by Defendants is *Kimball v. Millet*, 52 Wn. App. 512, 513, 762 P.2d 10 (1988), *review denied*, 111 Wn.2d 1036 (1989). It bears no relation to this case. There the injured plaintiff, an employee of a corporation, was injured by a bull *owned by the corporation*. The individual defendants owned the land where the corporation operated its farm, but the land had nothing to do with the injury. Not only was there no basis for individual liability by the defendants simply owning the farm, but the defendants were employed by the corporation. The *Kimball* court specifically noted that the plaintiff and defendants were in fact coemployees, which may not be true here. The court's gratuitous remark about the Defendants being corporate officers is of no significance to its holding and certainly is without any analysis of the point.

Because the Defendants draw no distinction between officers and directors, it must be assumed that either an officer or a director would have coemployee immunity. Several realistic hypothetical fact patterns will demonstrate that this contention is contrary to the command of the Industrial Insurance Act concerning third party actions, and leads to absurd *consequences.

Assume that a husband and wife own a corporation with 200 employees. The bylaws dispense with any specific duties for a director as authorized by RCW 23B.08.010(3). They name their 16-year-old daughter as a director. Because she is married to an 18-year-old, she is of full legal age and entitled to be a corporate director. RCW 26.28.020 (all

minors married to person of full age shall be deemed to be of full age). If the 16-year-old daughter negligently injures any of the 200 corporate employees who was acting within the scope of his or her employment, the daughter is completely immune from liability. Thus, if immunity attaches as a matter of law, there would be no inquiry as to whether the daughter was an employee of the corporation or had any duties. Therefore, not only is the injured employee deprived of a claim against the daughter, but the industrial insurance fund bears the whole burden of the damages and is deprived of its right of reimbursement for third party liability. Next, assume the *ABC* corporation is a publicly held corporation with 5,000 employees. *D* is an outside director, but has no specific duties under the bylaws. Driving while intoxicated, *D* kills one of the corporate employees who is driving a corporate car on business. If immunity attaches as a matter of law, *D* has complete immunity. There would be no inquiry whether the intoxicated driver had any connection with corporate business. Because *D* was named on a piece of paper as a director, immunity automatically would follow as a matter of law. Again, the fund bears the cost; reimbursement to the fund is denied.

The purpose of the exclusive remedy provision of the workers' compensation law is to give immunity to the employer and coemployees acting in the scope and course of their employment. Its purpose is not to create artificial immunity to one whose only connection with the corporate employer's business is having his or her name on a piece of paper as an officer and/or director. To provide immunity as a matter of law denies the right of a third party action against the person actually responsible for the injury or death. That would frustrate the direction of the Legislature that the Department be reimbursed from proceeds of such third party action.

We reverse the summary judgment and remand for further proceedings.

UTTER, SMITH, GUY, and JOHNSON, JJ., concur.

DOLLIVER, J. (dissenting) — I would hold that the Plaintiffs' exclusive remedy lies in the Industrial Insurance Act and would, therefore, affirm the trial court and Court of Appeals. The majority reverses the trial court's dismissal of the Plaintiffs' claims, and in so doing it misstates the issues, ignores relevant Washington case law, relies on inapposite cases from other jurisdictions, adopts a doctrine repeatedly rejected in Washington, and issues an opinion that is itself internally inconsistent. Furthermore, the majority never clearly articulates its holding, nor does it provide guidance for the trial court on remand. Moreover, I cannot agree on a policy level with the majority's decision to weaken the exclusivity provisions of the Industrial Insurance Act and broaden third party liability. Therefore, I dissent.

Under the Industrial Insurance Act, both employers and co-workers are immune from common law suit. *DuVon v. Rockwell Int'l*, 116 Wn.2d 749, 753, 807 P.2d 876 (1991). RCW 51.24.030(1) precludes a civil action against a third person who is in the "same employ" as the injured co-worker. *Wilson v. Boots*, 57 Wn. App. 734, 736-37, 790 P.2d 192 (1990) (citing *Peterick v. State*, 22 Wn. App. 163, 190, 589 P.2d 250 (1977), *review denied*, 90 Wn.2d 1024 (1978), *overruled on other grounds by Stenberg v. Pacific Power & Light Co.*, 104 Wn.2d 710, 719, 709 P.2d 793 (1985)). Thus, the first issue to be addressed is whether it can be said, as a matter of law, that the Thompsons were "in the same employ" as Evans and Kanning due to their status as corporate officers.

First, I note that the majority's treatment of this issue is careless and inconsistent. Early in its opinion the majority states:

[W]e hold that there are genuine issues of material fact as to whether Defendants, particularly Defendant wife, were in fact coemployees of the decedents. . . .

Majority, at 438. Later, the majority finds the wife was "not in fact an employee" (majority, at 445) and blithely states:

The wife was not employed by the corporation . . . [and,] [s]ince she had no job and no duties, it necessarily follows that she

could not be acting in the scope and course of a nonexistent employment.

Majority, at 445. As a threshold matter, these statements are not supported by the record. More disturbing, however, the majority has engaged in the very factfinding it initially reserved to the trial court (or the jury) in the further proceedings it has ordered on remand.

Aside from this mixed message given by the majority, I disagree with its basic approach to the issue at hand: namely, whether Robert and Amber Thompson, as corporate officers of Santana, were in the "same employ" as Evans and Kanning. Nowhere in its opinion does the majority attempt to interpret the relevant statutory language. For example, the majority does not outline what level of involvement a corporate officer must have to be considered "in the same employ" as an injured worker and, thus, be immune from third party liability. Nor does the majority clearly analyze the facts in such a way that would provide guidance to a trial court attempting to apply its holding. As to the status of Robert Thompson, the majority is even hesitant to recognize him as an employee of Santana, citing an incomplete record on this issue. Majority, at 445. I believe this narrow view of employment for the purposes of third party immunity would put individuals at unjustifiable risk of being held liable for workplace injuries. Rather than leave this issue to an unpredictable resolution by the factfinder based on a cumbersome (and at this point nonexistent) test, I would allow the trial court to find as a matter of law that corporate officers are "in the same employ" as an injured worker.

As pointed out by the *Peterick* court, the Legislature has not defined "in the same employ":

Had the legislature desired to include provisions stating that one in the same employ might be sued if he or she were (1) not engaged in work at the site of the injury; (2) officers or directors of the corporation involved who were not reported as employees; or (3) officers or directors of more than just the corporation involved, it could have done so. . . .

*Peterick*, 22 Wn. App. at 190. Because it did not do so, we must interpret the statute to further the Legislature's goals.

We know that under RCW 51.04.010, civil actions arising out of work-related injuries are abolished and replaced with the exclusive remedies and benefits under the Industrial Insurance Act. We also know that the purpose of this statutory scheme is to avoid the costly and uncertain jurisdiction of the courts and to provide swift, certain relief for injured workers regardless of fault. In exchange for this guaranteed right of recovery, employees are restricted from bringing civil actions against their employers and co-employees for on-the-job injuries. Furthermore, Washington's statute has always been stringently construed to eliminate such claims. *Thompson v. Lewis Cy.*, 92 Wn.2d 204, 209, 595 P.2d 541 (1979).

With this in mind, I would apply a bright-line rule and find that Robert and Amber Thompson, as corporate officers, were "in the same employ" as Evans and Kanning, and, therefore, are immune from third party liability under the Industrial Insurance Act. *See Kimball v. Millet*, 52 Wn. App. 512, 513, 762 P.2d 10 (1988) ("the Millets, as corporate officers, were Kimball's coemployees"), *review denied*, 111 Wn.2d 1036 (1989); *Peterick*, 22 Wn. App. at 190-91 (finding the officers and directors to be "in the same employ" as the plaintiffs and, therefore, immune from suit). To hold that corporate officers are employees of a corporation as a matter of law would be consistent with the Industrial Insurance Act's general policy of increasing the certainty and reducing the volume of litigation of workers' injuries. It would also provide for uniform application of workers' compensation laws in Washington and alleviate the possibility of factfinders reaching inconsistent conclusions in different cases.

The majority seems to be concerned that such a rule would unfairly deprive injured workers (or the state fund) from recovering from negligent third parties. This is simply not the case. Because coemployee immunity is not absolute, finding that a corporate officer is "in the same employ" does not end the analysis. It merely shifts into the appropriate arena the inquiry of whether liability should attach. Cases in which liability should attach can be resolved using exceptions such as the dual persona doctrine. The majority's find-

ing that a corporate officer is not necessarily in the "same employ" as an injured corporate employee, however, can indiscriminately strip an officer of immunity and leave the officer open to liability even for a work-related injury.

A hypothetical illustrates this point. Assume *A* is a corporate officer of the *XYZ* company, but is not on the payroll, does not perform a specific "job" for the company, and is not reported by *XYZ* as an employee for the purposes of industrial insurance. While at the *XYZ* plant for a meeting with other officers, *A* is involved in a work-related accident in which an *XYZ* employee is injured. The worker sues A for negligence. Under the majority's holding, *A* is not an "employee" of *XYZ*, and is therefore not immune from third party liability — end of analysis, no further inquiry. This result was clearly not intended by the Legislature when it abolished civil actions arising out of work-related injuries.

I would hold that a corporate officer is immune from third party liability unless he or she possess a second persona "so completely independent from and unrelated to" his or her status as a coemployee that the law recognizes it as a separate person. *Corr v. Willamette Indus., Inc.*, 105 Wn.2d 217, 220-21, 713 P.2d 92 (1986) (quoting 2A Arthur Larson, *Workmen's Compensation* § 72.81 (1984) (recognizing that, in the case of a corporate merger, the corporate employer may not be immune from suit by an employee if the merging corporation would have been liable to that individual)); *Kimball v. Millet, supra* at 513 (discussing the doctrine in the context of coemployee immunity). *See generally* 2A Arthur Larson, *Workmen's Compensation* § 72.80 *et seq.* (1988).

Under the "dual persona" theory of liability, an injured worker may avoid the strict exclusivity provisions of the Industrial Insurance Act in a narrow group of cases in which an otherwise immune coemployee has breached a duty owed the injured worker in a completely separate and unrelated identity. The relevant inquiry is not whether a separate theory of liability could be argued against the same legal person, but whether the controversy involves a separate legal entity. The "dual persona" test is very stringent and, although it has

been recognized in Washington, it has never been successfully applied. *See Corr*, 105 Wn.2d at 220; *Kimball*, 52 Wn. App. at 513.

This test is not met when the immune party merely has duties to the injured co-worker in two capacities. The more relaxed standard employed by the doctrine of "dual capacity" has been rejected in the Washington courts. *See Corr*, 105 Wn.2d at 220 (refusing, in a products liability case, to hold an otherwise immune employer liable in the capacity of manufacturer); *Spencer v. Seattle*, 104 Wn.2d 30, 700 P.2d 742 (1985) (expressly rejecting dual capacity and holding that the City, in its capacity as employer, was immune from suit, regardless of separate duties it owed to its employee in the capacity of a municipality). We have rejected the dual capacity doctrine because little would remain of the Industrial Insurance Act's exclusivity provision if employer and coemployee immunity could be overcome each time a separate theory of liability is available.

In his comprehensive treatise, Arthur Larson stresses the importance of exclusivity provisions in the successful operation of workers' compensation schemes. *See generally* 2A Larson § 72.80 *et seq.* He has long advocated the rejection of the dual capacity doctrine, and he advocates only cautious use of the dual persona doctrine. 2A Larson § 72.80 *et seq.* Washington courts have agreed, holding that "[t]he immunities conferred by the act are not easy to avoid". *Kimball*, 52 Wn. App. at 513 (citing *Spencer*, 104 Wn.2d at 32 (emphasizing that Washington courts have consistently recognized and reinforced the exclusive remedy provisions of the Industrial Insurance Act)).

Not once mentioning the Washington case law advocating only cautious and rare use of the dual persona doctrine, the majority sees an opportunity to further weaken third party immunity and suggests the Thompsons are subject to third party suit under this theory. It does so, however, by misstating the issue, misapplying the dual persona doctrine, and effectively adopting the "dual capacity" doctrine. The majority frames the question as follows:

When the defendants are landowners and constitute a completely separate legal entity from the employer of a worker, are the defendants immune under the Industrial Insurance Act for breach of their duties as landowners? . . .

Majority, at 437. The majority has introduced a completely irrelevant inquiry into its analysis. The Thompsons never claim employer immunity derived from the corporation. Thus, the question is not whether the Defendants are separate legal entities *from the corporate employer Santana*, but whether their identities as individuals "in the same employ" as the deceased workers are completely independent from and unrelated to their identities as landowners so as to constitute separate legal entities.

The majority relies on easily distinguishable cases from other jurisdictions. For example, in *Perkins v. Scott*, 554 So. 2d 1220, 1221 (Fla. Dist. Ct. App. 1990) (a case referred to by the majority as "[d]irectly in point" (majority, at 439)), the defendant argued he was entitled to pierce the corporate veil and receive his corporation's immunity. The Defendants in the present case, however, do not claim employer immunity through their corporation. Rather, they claim immunity as individuals "in the same employ" as Evans and Kanning, an immunity created by the Legislature.

Furthermore, although the defendant in *Perkins* also argued he was immune from suit as a coemployee, the case is not relevant authority on this issue in Washington. The court applied the dual capacity doctrine and found that if the defendant as the owner of the premises had retained separate *duties* from his duties as an employee of the corporation, he could be held liable. As noted above, however, we have rejected the dual capacity doctrine in Washington and will not impose liability based on duties owed in a separate capacity. The *Perkins* court did not analyze the dual persona doctrine. *See Perkins*, 554 So. 2d at 1221. The majority also mistakenly relies on *LaBelle v. Crepeau*, 593 A.2d 653 (Me. 1991), a case which applies the dual capacity doctrine.

In *Doggett v. Patrick*, 197 Ga. App. 420, 398 S.E.2d 770 (1990), a corporate employee was injured when a suspended

ceiling fell and knocked him into a meat slicer. The employee sued the defendant, owner of the premises and executive officer of the corporation. Because the defendant had constructed the building before it was leased to the corporation, the court found there was an issue as to whether the defendant acted as a separate legal entity in constructing the building:

> Evidence in the record creates at least an issue of fact to be determined by a jury regarding whether defendant's knowledge, if any, of the allegedly defective condition came to him through his ownership of the premises as opposed to his status as president of the company which leased the premises from him.

*Doggett*, 197 Ga. App. at 422. In the present case, however, Santana had exclusive possession of the premises and had in fact constructed the storm drain. Thus, there is no issue as to whether the allegedly dangerous condition existed on the premises before Santana took control of the property. The facts of *Doggett* are not analogous.

Additionally, *Senken v. Eklund*, 146 Misc. 2d 811, 552 N.Y.S.2d 490 (Sup. Ct. 1990) does not support the majority's holding. In *Senken*, a worker employed by a partnership was injured when working on a house owned by a partner and his wife, who was not a partner. Unlike the wife who as a nonpartner was not entitled to immunity, both Amber and Robert Thompson are corporate officers of Santana, as well as owners of the land Santana uses as a dump site for its fill material. It is noteworthy that the *Senken* court held the husband immune as a matter of law and did not apply the dual persona doctrine to relieve him of that immunity. Thus, this case more aptly supports my position than the majority's. The majority's reliance on this case is misplaced.

The majority not only cites inapposite cases, but it also cites cases which are inconsistent with each other. Some of the cases cited by the majority require a finding of fact regarding the application of the dual persona doctrine, while others find it unnecessary as a matter of law to apply the doctrine. The majority never clearly articulates its holding, and on remand the trial court will be left wondering how to proceed.

I have pointed out the failings of the majority's analysis on this issue, but again, as with the first issue, I disagree with the majority on a more fundamental level. I simply cannot justify an application of the dual persona doctrine in this case where the officers of the corporation are held personally liable for alleged negligence that was clearly business related.

I agree with Larson's summary of why a landowner should not be held liable under the dual persona doctrine:

> It is held with virtual unanimity that an employer cannot be sued as the owner or occupier of land[.] . . .
>
> Apart from the basic argument that *mere ownership of land does not endow a person with a second legal persona or entity*, there is an obvious practical reason requiring this result. An employer, as part of his business, will almost always own or occupy premises, and maintain them as an integral part of conducting his business. *If every action and function connected with maintaining the premises could ground a tort suit, the concept of exclusiveness of remedy would be reduced to nothingness.*

(Italics mine.) 2A Larson § 72.82, at 14-245 to 14-251. This reasoning applies equally well to the Defendants, who as the sole corporate officers of Santana, own the premises and are immune as coemployees. Without a strict interpretation of the dual persona doctrine, coemployee immunity will be weakened to the point of meaninglessness.

The majority claims Larson's statement does not apply to the present case, because the Thompsons, as individuals, are separate legal entities from the corporate employer. There are many closely held corporations such as Santana in this state, and I cannot agree with the majority's conclusion that had the Thompsons not incorporated they would be immune, but since they have incorporated, they are not. In addition, I must emphasize again that the relevant inquiry in this case is whether their status as landowners is completely unrelated to their status as corporate officers so as to create a separate legal entity. Thus, the case cited by the majority, *Couillard v. Van Ess*, 152 Wis. 2d 62, 447 N.W.2d 391 (Ct. App.), *review denied*, 451 N.W.2d 298 (1989), is inapplicable, because in that case, the premises were separately owned by

a distinct legal entity, namely a registered partnership. In the present case the Defendants each comprise only one legal entity, a property owner/corporate officer. *Cf.* 2A Larson § 72.82, at 14-247.

Washington's only example of the dual persona doctrine in the context of landowner liability is *Kimball v. Millet*, 52 Wn. App. 512, 762 P.2d 10 (1988), *review denied*, 111 Wn.2d 1036 (1989). In *Kimball*, defendants Earl and Vina Mae Millet owned farmland and leased it to a farming corporation. As corporate officers, the Millets were immune from suit by their injured coemployee Kimball. (A fact the majority glosses over.) Kimball argued that the Millets should be held liable as landowners under the dual persona doctrine. Finding on several grounds that the Millets were not liable, the court rejected the "dual persona" theory of liability holding that the Millets, as landowners, did not have a second persona so completely separate as to be recognized as a separate person under the doctrine. *Kimball*, 52 Wn. App. at 514 (citing and adopting the reasoning of *Heritage v. Van Patten*, 59 N.Y.2d 1017, 453 N.E.2d 1247, 466 N.Y.S.2d 958 (1983)).

The majority contends that giving corporate officers and directors coemployee immunity and shielding them from landowner liability would unjustly relieve them of their duties as landowners. I emphasize, however, that coemployee immunity and the dual persona doctrine operate within the context of the workers' compensation scheme in Washington, which is designed to limit employer and coemployee liability, as well as provide certainty of remedy to injured workers. By continuing to recognize the dual persona doctrine as a viable theory of liability, I certainly recognize that there may be a point at which the fact that a landowner and an injured party have the same employer becomes a matter too remote to justify immunity from liability. For example, had the accident occurred at a property owned by the Thompsons, but their ownership was completely unrelated to their involvement with Santana, I would not hesitate to apply the dual persona doctrine. This, however, is not such a case.

The Thompsons' identities as landowners are clearly related to their identities as Santana's sole corporate officers. The record shows the Thompsons owned and maintained their land primarily as a dump site for Santana. Although they listed the property as their residence so that their children could attend Redmond schools, their ownership of the land was for the benefit of Santana, because Santana, as an excavating company, was in need of a site to dump its material. Furthermore, it is undisputed in the record that Santana performed all of the work on the Redmond property, and as part of its dumping and filling activities on the site, Santana built the storm drain. Under these facts, I cannot justify a conclusion that the Thompsons' identities as landowners are sufficiently separate from and unrelated to their identities as coemployees to warrant holding them civilly liable under the dual persona doctrine.

In its conclusion, the majority finds that the Thompsons are subject to liability because they were not acting in the course of employment. I agree that in order to be immune from a third party tort claim, a coemployee must be acting in the course of employment at the time the injury occurs. *Olson v. Stern*, 65 Wn.2d 871, 877, 400 P.2d 305 (1965); *Taylor v. Cady*, 18 Wn. App. 204, 206, 566 P.2d 987 (1977). For example, under the Legislature's definition of "[a]cting in the course of employment", a coemployee cannot claim immunity from a tort claim based on an injury that occurred after work in the parking lot. RCW 51.08.013.

This inquiry, however, generally focuses on the time or place of the negligence that caused the injury, and the analysis is performed to determine whether a *particular act* was committed in the course of employment. *See, e.g., In re Hamilton*, 77 Wn.2d 355, 462 P.2d 917 (1969) (discussing whether an employee was acting in the course of employment while walking between her work site and an employee parking lot); *Belnap v. Boeing Co.*, 64 Wn. App. 212, 823 P.2d 528 (1992) (employee not in the course of employment while driving from jury duty to work); *Bergsma v. Department of Labor & Indus.*, 33 Wn. App. 609, 656 P.2d 1109 (1983)

(employee not acting in the course of employment while injured in parking lot during his lunch period); *Olson v. Stern, supra* (coemployee liable because injury occurred outside of the work area while he was driving home); *Taylor v. Cady, supra* (although injury occurred in parking lot, coemployee was immune from liability because at the *time* of the alleged negligence he was performing work duties).

The Plaintiffs, however, premise liability on the Thompsons' status rather than on a particular act. They argue that the Thompsons were not acting in the course of their employment because they breached their *separate duties* as landowners. To find that the Thompsons were not acting in the course of their employment because the duties they breached stemmed from a separate status would be, in effect, to adopt the dual capacity doctrine, which we have clearly rejected. *See Corr v. Willamette Indus., Inc.*, 105 Wn.2d 217, 219-20, 713 P.2d 92 (1986); 2A Larson § 72.81(c).

Because Santana's use of the land was virtually exclusive, and because Santana had a duty to provide its workers with a safe workplace, any actions relating to the maintenance of the land allegedly giving rise to landowner liability on the part of the Thompsons would necessarily have been connected with Santana's business. When a defendant's status as landowner and status as individual "in the same employ" as an injured worker are sufficiently interconnected so as to avoid liability under the dual persona doctrine, as is the case here, I would hold that the scope of employment requirement has been met.

Finally, I must comment on the majority's imprudent use of hypotheticals, which neither are accurate nor in any way advance the state of our workers' compensation law. As noted above, a finding that an individual is "in the same employ" as an injured worker (a conclusion that is by no means a given in the majority's hypothetical cases involving directors with no duties to their corporations) does not automatically shield the individual from liability. There will always be further inquiry, whether it is under the dual persona doctrine into the connection with the individual's iden-

tity as a coemployee, or under the scope of employment analysis into the time, place and circumstances of an allegedly negligent act. The majority's suggestion to the contrary is simply wrong.

Thus, because the negligence of the actors in the hypotheticals is obviously unrelated to their (non)involvement with the corporate employers, they would clearly be liable to the injured workers as third parties under any formulation of the third party liability test. Furthermore, the majority's reference to RCW 23B.08.010(3), which allows a corporation to eliminate a director's specific duties, is clearly a red herring because both Amber and Robert Thompson are *corporate officers* as well as directors of Santana.

The majority addresses the issues of this case in a careless manner, and with a disregard both for existing Washington case law and for how its rulings will affect future workers' compensation cases. For the reasons stated above, I cannot concur with the majority's clear break from our long-held approach to strictly construe the exclusivity provisions of the Industrial Insurance Act.

ANDERSEN, C.J., and DURHAM and MADSEN, JJ., concur with DOLLIVER, J.

Reconsideration denied November 4, 1994.