Guy RICCITELLI, M.D., Plaintiff-Appellant,

v.

Fredrik BROEKHUIZEN, M.D. and Carole Hagarty, R. N., PH.D., Defendants-Respondents-Petitioners,

AURORA HEALTH CARE, INC., Sinai Samaritan Medical Center, Inc. and Alan M. Wagner, M.D., Defendants.

Supreme Court

*No. 98–0329–FT. Oral argument June 2, 1999.—Decided June 24, 1999.*

(Also reported in 595 N.W.2d 392.)

For the defendants-respondents-petitioners the cause was argued by *David T. Flanagan*, assistant attorney general, with whom on the briefs was *James E. Doyle*, attorney general.

For the plaintiff-appellant there was a brief by *Mark J. Goldstein*, and *Padway & Padway, Ltd.*, Milwaukee and oral argument by *Mark J. Goldstein.*

Amicus curiae was filed by *Edward E. Robinson* and *Warshafsky, Rotter, Tarnoff, Reinhardt & Bloch, S.C.*, Milwaukee for the Wisconsin Academy of Trial Lawyers.

¶ 1. JON P. WILCOX, J. The defendants, Fredrik Broekhuizen, M.D., and Carole Hagarty, R.N., Ph.D, seek review of a decision of the court of appeals[1] subjecting them to tort liability under the "dual persona" doctrine for actions arising out of their affiliation with Sinai Samaritan Medical Center. Even though the plaintiff, Dr. Riccitelli, failed to file a timely notice of

---

[1] *Riccitelli v. Broekhuizen*, 221 Wis. 2d 533, 585 N.W.2d 709 (Ct. App. 1998)(rev'g an order for the Circuit Court of Milwaukee County, John A. Franke, Judge).

claim under Wis. Stat. § 893.82(3), the court of appeals held that Drs. Broekhuizen and Hagarty, faculty members of the University of Wisconsin-Madison Medical School who were assigned to Sinai Samaritan Medical Center pursuant to an affiliation agreement, could be sued for their work as director and associate director, respectively, of a residency program at Sinai Samaritan Medical Center because they possessed "dual personas," a doctrine borrowed from worker's compensation law. We do not agree. We further reject Dr. Riccitelli's estoppel claims, as well as his assertion that the notice of claim statute violates his equal protection and due process rights. The decision of the court of appeals is reversed.

## I.

¶ 2. For purposes of this appeal, the facts are not in dispute. In June 1991, Dr. Riccitelli was accepted in a four-year obstetrics and gynecology (OB-GYN) residency training program operated by Sinai Samaritan Medical Center (Sinai Samaritan) in Milwaukee. Dr. Broekhuizen, a member of the University of Wisconsin Medical School (U.W. Medical School) faculty, was the program director. Dr. Hagarty, an assistant professor at the U.W. Medical School, was the assistant director.

¶ 3. The residency program existed under an "Affiliation Agreement" between the Board of Regents of the University of Wisconsin and Aurora Health Care, Inc. (Aurora), which operates Sinai Samaritan. Under the agreement, members of the U.W. Medical School faculty were to provide clinical and administrative services, teaching services for graduate medical education, continuing medical education, and other health science education. The U.W. Medical School was responsible for the recruitment and maintenance of

quality faculty. Decisions on full-time faculty appointments, with either the Center for Health Sciences faculty, the clinical faculty or the tenured or tenure-track faculty, were to be made by the U.W. Medical School, with consultation from the President of Aurora; clinical and administrative assignments of the full-time faculty were to be jointly approved by the Dean of the U.W. Medical School and the President of Aurora; faculty members assigned to Sinai Samaritan were required to be qualified members of the medical staff where assigned; and faculty appointments were to be governed by University policy and procedures concerning appointments to the U.W. Medical School.

¶ 4. · Also under the agreement, the State of Wisconsin was to provide liability protection, pursuant to Wis. Stat. §§ 895.46 and 893.82 (1989–90), for faculty participating in the U.W. Medical School educational programs at Aurora institutions on a full-time basis for acts within the scope of their employment (activities contemplated by the Agreement). The agreement explicitly directed that the statutory notification and claim procedures of § 893.82 (1989–90) be utilized for claims against the Board of Regents, or any of its employees or students.

¶ 5. Dr. Riccitelli's four-year residency was renewed annually. During Dr. Riccitelli's fourth year, he was notified by the Resident Evaluation Committee (Committee) that it would not certify his completion of the residency program. One month later, in April 1995, Dr. Riccitelli was notified that "in order to complete his residency, [he] must participate in a three month probationary period followed by a six (6) month remediation program." Despite his participation, in September 1995, the Committee voted to terminate Dr. Riccitelli from the residency program.

¶ 6. Dr. Riccitelli immediately sought an injunction barring his termination, as well as compensatory and punitive damages.[2] The complaint stated that Dr. Broekhuizen was a professor and the chairman and program director for OB-GYN Department at the U.W. Medical School Milwaukee clinical campus, and in that capacity, he was head of the residency program for the U.W. Medical School Milwaukee clinical campus operated in conjunction with Aurora and Sinai Samaritan. Dr. Riccitelli alleged that as a resident physician in the OB-GYN Department at the U.W. Medical School Milwaukee clinical campus, he held an academic/professional staff appointment and was, therefore, entitled to the procedural guarantees provided state employees under Wis. Stat. § 36.15(3)(1993–94).

¶ 7. In the course of the injunction hearing on Dr. Riccitelli's employment status, Dr. Broekhuizen testified that the residency program was Sinai Samaritan's medical program, and that as program director he acted on behalf of Sinai Samaritan and not in his role as a U.W. faculty member. When asked by Dr. Riccitelli's counsel whether the affiliation with the University was an essential component of the residency program, Dr. Broekhuizen replied *"it's essential for me, since [the affiliation with the University is] the reason I'm there. . . .*but it's not essential for the residency program to have a U.W. affiliation." Dr. Broekhuizen further explained that he wears three, sometime overlapping, hats as a practicing physician, as an OB-GYN residency program director, and as a U.W. Medical School faculty member.

---

[2] The attorney general appeared for and represented Dr. Broekhuizen, the U.W. Medical School, and the Board of Regents in Dr. Riccitelli's request for an injunction.

¶ 8. Following the evidentiary hearing, the Milwaukee County Circuit Court, the Honorable John DiMotto, found that residents, such as Dr. Riccitelli, in the OB-GYN residency program were solely employees of Sinai Samaritan, and were not granted appointments as academic staff with the U.W. Medical School. Because the residency program was run by Sinai Samaritan, and because Dr. Riccitelli was not a University employee, the circuit court denied Dr. Riccitelli injunctive relief. Following the dismissal of Dr. Riccitelli's request for an injunction, the Committee terminated him from the residency program.

¶ 9. In August 1997, Dr. Riccitelli filed the current action, alleging, among other claims, intentional interference with contract/hindrance of contract on the part of Drs. Broekhuizen and Hagarty. Drs. Broekhuizen and Hagarty moved to dismiss, arguing that they were employees of the University, and that Dr. Riccitelli's failure to comply with the notice of claim statute, Wis. Stat. § 893.82 (1995–96),[3] required dismissal.[4] The Milwaukee County Circuit Court, the Honorable John A. Franke, treating the motion as one for summary judgment, agreed that § 893.82 was applicable, and that it was not complied with; the court

---

[3] All references are to the 1995–96 version of the statutes unless otherwise noted.

[4] Drs. Broekhuizen and Hagarty submitted affidavits in support of their motion to dismiss. Both averred that they are currently, and were throughout the period during which Dr. Riccitelli was a resident physician, employees of the State of Wisconsin as members of the U.W. Medical School faculty. In the course of their duties as State of Wisconsin employees, both were assigned by the University to supervise, instruct, and evaluate resident physicians in the obstetrics and gynecology residency training program at Sinai Samaritan.

thereby dismissed Drs. Broekhuizen and Hagarty as defendants in the action. Dr. Riccitelli appealed.

¶ 10. A majority of the court of appeals reversed. The court concluded that Drs. Broekhuizen and Hagarty were employees and/or agents of both the U.W. Medical School and Aurora/Sinai; therefore, they each had a "dual persona" which obviated the need for Dr. Riccitelli to comply with the notice requirements of Wis. Stat. § 893.82. *Riccitelli*, 221 Wis. 2d at 546, 556. We accepted Drs. Broekhuizen and Hagarty's petition for review.

## II.

¶ 11. On review of a summary judgment order, we employ the same methodology, set forth in Wis. Stat. § 802.08(2), as do the circuit courts and the court of appeals. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). Under § 802.08(2), summary judgment shall be granted only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

## III.

¶ 12. The issue in this case is whether Dr. Riccitelli's failure to timely file a notice of claim with the state, pursuant to Wis. Stat. § 893.82, mandates dismissal of Drs. Broekhuizen and Hagarty from this action. Section 893.82(3) provides in part:

> [N]o civil action or civil proceeding may be brought against any state officer, employe or agent for or on

110

account of any act growing out of or committed in the course of the discharge of the officer's, employe's or agent's duties. . .unless within 120 days of the event causing the injury, damage or death giving rise to the civil action or civil proceeding, the claimant in the action or proceeding serves upon the attorney general written notice of a claim. . . .

¶ 13. It is undisputed that Dr. Riccitelli failed to comply with the notice statute. Regarding Dr. Hagarty, both Dr. Riccitelli and the court of appeals insist that she is similarly situated with Dr. Broekhuizen regarding her employment status. *Riccitelli*, 221 Wis. 2d at 536 n.1, 555–56. We do not agree. Dr. Hagarty, who was the associate director of the Sinai Samaritan OB-GYN residency program, was not a party in the 1995 case, and did not offer testimony regarding her associate director position. Dr. Hagarty's affidavit in which she averred to be *an employee of the State of Wisconsin* who was assigned by the U.W. Medical School to assist physicians involved in the residency program, is the *only evidence* in the record regarding her employment status. We conclude that without any evidence to the contrary, Dr. Hagarty is entitled to judgment as a matter of law. Wis. Stat. § 802.08(2).

¶ 14. We will now address Dr. Riccitelli's arguments as to the remaining defendant, Dr. Broekhuizen. Dr. Riccitelli first argues that Dr. Broekhuizen's 1995 testimony precludes him, under the doctrines of judicial estoppel and equitable estoppel, from claiming that he is a state employee in this suit; therefore, the notice statute is inapplicable.

¶ 15. The equitable doctrine of judicial estoppel precludes a party from asserting a position in a legal

proceeding and then subsequently asserting an inconsistent position. *State v. Petty*, 201 Wis. 2d 337, 347, 548 N.W.2d 817 (1996). The doctrine may be invoked if: (1) the later position is clearly inconsistent with the earlier position; (2) the facts at issue are the same in both cases; and (3) the party to be estopped convinced the first court to adopt its position. *Id.* at 348. Determining the elements and considerations involved before invoking the doctrine of judicial estoppel are questions of law which we decide independently of the circuit court or court of appeals. *Id.* at 347.

¶ 16. We conclude that the principles for applying judicial estoppel are not present in this case. Two of the requirements for the application of the doctrine are absent here. First, the record does not support Dr. Riccitelli's contention that Dr. Broekhuizen has consistently asserted irreconcilably inconsistent positions as to his status. *See id.* at 349. Dr. Broekhuizen testified that he wore three, sometimes overlapping, hats, and that as the program director for the residency program—Sinai Samaritan's program—he acted on behalf of Sinai Samaritan and not in his role as a U.W. Medical School faculty member. However, Dr. Broekhuizen was not testifying as to *his* employment or *his* employer. Rather, he was explaining the difference between two training programs—medical student and residency programs—one in the province of the U.W. Medical School and the other guided by Sinai Samaritan.

¶ 17. His affidavit corroborates that from 1991 through 1995, while serving as the director of the residency program, he was on the U.W. Medical School facility and that all acts he undertook in the OB-GYN residency program "were done in the course of [his] duty as an employee of the State of Wisconsin." We do

not view Dr. Broekhuizen's statements as irreconcilably inconsistent.

██

¶ 18. Similarly, Dr. Riccitelli's claim that the facts at issue in the two cases are the same is unfounded. In the first case, the circuit court determined the status of the OB-GYN residency program and the status of Dr. Riccitelli, not the status of Dr. Broekhuizen. For these reasons, we conclude that equity does not require estopping Dr. Broekhuizen from claiming he was, and continues to be, a state employee. We reject Dr. Riccitelli's judicial estoppel argument.

¶ 19. Dr. Riccitelli further argues that Dr. Broekhuizen should be equitably estopped from claiming that he was a state employee because Dr. Broekhuizen testified to the contrary in the prior case and because Dr. Riccitelli reasonably relied on Dr. Broekhuizen's sworn testimony.

██

¶ 20. Equitable estoppel, which focuses on the conduct of the parties, requires:

> (1) action or non-action, (2) on the part of the one against whom estoppel is asserted, (3) which induces reasonable reliance thereon by the other, either in action or non-action, and (4) which is to his or her detriment.

*Milas v. Labor Ass'n of Wisconsin*, 214 Wis. 2d 1, 11–12, 571 N.W.2d 656 (1997).

¶ 21. We do not agree that the elements of equitable estoppel are present in this case. Dr. Riccitelli's premise that the focus is upon the testimony (action) of Dr. Broekhuizen (the party against whom estoppel is asserted) regarding Dr. Broekhuizen's employment

status is incorrect. Dr. Broekhuizen did not testify to, nor did the first case involve Dr. Broekhuizen's employment status. Rather, Dr. Riccitelli characterized Dr. Broekhuizen's employment as a U.W. Medical School faculty member *as the basis* for Dr. Riccitelli's claim that as an OB-GYN resident, he too was a state employee subject to the procedural protections afforded state employees.

¶ 22. If Dr. Riccitelli in fact relied on Dr. Broekhuizen's 1995 testimony to conclude, as a matter of law, that Dr. Broekhuizen was not a state employee, then such reliance was unreasonable. As the court of appeals noted, "Dr. Riccitelli's first action was premised, in part, on his theory that Dr. Broekhuizen was a state employee." *Riccitelli*, 221 Wis. 2d at 548. Even if Dr. Broekhuizen's testimony in the injunction suit left Dr. Riccitelli with the impression or belief that Dr. Broekhuizen was not a state employee, "the statutory mandates provide no 'exception for plaintiffs who have an honest but mistaken belief about the status of the defendant as a state employee.'" *Id.* at 549 (quoting *Mannino v. Davenport*, 99 Wis. 2d 602, 608, 299 N.W.2d 823 (1981)(discussing Wis. Stat. § 895.45 (1977), now Wis. Stat. § 893.82). Because the elements of equitable estoppel and judicial estoppel have not been met, these doctrines do not preclude summary judgment in this second action.

IV.

¶ 23. Dr. Riccitelli next contends that he may maintain his suit against Dr. Broekhuizen, based on the "dual persona" doctrine, a concept taken from worker's compensation law. He insists that if Dr.

114

Broekhuizen has but one persona, it is that of a Sinai Simaritan employee.

¶ 24. The "dual persona" doctrine is an exception to the exclusive remedy provision of the Worker's Compensation Act. *Henning v. General Motors Assembly Div.*, 143 Wis. 2d 1, 7, 419 N.W.2d 551 (1988). Under this doctrine, " '[a]n employer may become a third person, vulnerable to tort suit by an employee, if—and only if—he possesses a second persona so completely independent from and unrelated to his status as employer that by established standards the law recognizes it as a separate legal person.' " *Id.* at 15 (quoting 2A A. Larson, Workmen's Compensation Law, § 72.81 at 14–229 (1987)); *Rauch v. Officine Curioni, S.P.A.*, 179 Wis. 2d 539, 543, 508 N.W.2d 12 (Ct. App. 1993); *Schweiner v. Hartford Accident & Indem. Co.*, 120 Wis. 2d 344, 352, 354 N.W.2d 767 (Ct. App. 1984). The dual persona exists where the duality is "firmly entrenched in common law or equity" or where the duality is one created by modern statute. *Henning*, 143 Wis. 2d at 19 (quoting 2A A. Larson, supra, § 72.81 at 14–232).

¶ 25. The court of appeals found the dual persona doctrine to be an exception to the notice requirement based on its determination that under the affiliation agreement, Dr. Broekhuizen had apparent dual employment/agency status as U.W. Medical School faculty and administration assigned to Aurora/Sinai. *Riccitelli*, 221 Wis. 2d at 553–54. The court relied on *Rauch*, 179 Wis. 2d 539, and *Kashishian v, Port*, 167 Wis. 2d 24, 481 N.W.2d 277 (1992) for the application of the doctrine.

■

¶ 26. We are not convinced that the dual persona doctrine should be applied to circumvent a party's failure to file a timely notice of claim under Wis. Stat.

§ 893.82(3). The notice statute provides that no action shall be brought unless the required notice is given. *Id.* No time exception is permitted. *Renner v. Madison Gen. Hosp.*, 151 Wis. 2d 885, 889, 447 N.W.2d 97 (Ct. App. 1989); *Yotvat v. Roth.* 95 Wis. 2d 357, 361, 290 N.W.2d 524 (Ct. App. 1980)(interpreting Wis. Stat. § 895.45(1)(1977), now § 893.82); § 893.82(3). As a jurisdictional statute, § 893.82(3) requires strict compliance. *Oney v. Schrauth*, 197 Wis. 2d 891, 904, 541 N.W.2d 229 (Ct. App. 1995).

██

¶ 27. The purpose of the notice of claim statute is to enable the governmental unit to investigate a claim against an employee, to avoid needless litigation, and to settle all reasonable claims. *Ibrahim v. Samore*, 118 Wis. 2d 720, 726–27, 348 N.W.2d 554 (1984); *Mannino v. Davenport*, 99 Wis. 2d 602, 609, 299 N.W.2d 823 (1981); *see also* Wis. Stat. § 893.82(1)(a)1–3. The dual persona doctrine, on the other hand, serves as part of the delicate balancing of interests represented in the worker's compensation laws. *Henning*, 143 Wis. 2d at 11. Importing the dual persona doctrine to allow a party to vitiate the notice of claim provision, does not fit well with the purposes of either § 893.82(3) or the dual persona doctrine. "To the extent that the present law may be disparate, unequal or uneven in its application, it is a question for the legislature to address." *Henning*, 143 Wis. 2d at 26–27 (quoting *Jenkins v. Sabourin*, 104 Wis. 2d 309, 323, 311 N.W.2d 600 (1981)).

¶ 28. Moreover, for the dual persona doctrine to apply, the two persona must be completely *independent from* and *unrelated to* one another such that the law recognizes them as separate legal persons. *Henning*, 143 Wis. 2d at 15. Even if we were to conclude that the

dual persona doctrine could be applied in this case, we agree with the dissent in *Riccitelli* that the elements have not been met. Dr. Broekhuizen's participation in the decision to release Dr. Riccitelli grew out of and was related to his employment with the U.W. Medical School. *Riccitelli*, 221 Wis. 2d at 562 (Fine, J., dissenting).

¶ 29. The record supports this conclusion. Dr. Broekhuizen was, and continues to be a full-time member of the U.W. Medical School faculty. This fact is not controverted.

¶ 30. Moreover, Dr. Broekhuizen explained in 1995 why he was practicing academic medicine in Milwaukee—he was assigned there because of the U.W. Medical School's affiliation with Sinai Samaritan. The affiliation agreement confirmed that the U.W. Medical School was to assign its faculty to provide teaching services for graduate medical education, i.e., residency programs, at Sinai Samaritan. The agreement also stated that the State of Wisconsin was to provide liability protection for its faculty (and students) participating in the U.W. Medical School education programs at Aurora institutions.

¶ 31. Dr. Broekhuizen reaffirmed in his affidavit, without contradiction, that he was a full-time faculty member of the U.W. Medical School. As a faculty member, the U.W. Medical School assigned Dr. Broekhuizen to the OB-GYN Department at Sinai Samaritan in accordance with the affiliation agreement the U.W. Medical School had entered into with Aurora.

¶ 32. As the State points out, there is no evidence to suggest that what Dr. Broekhuizen did in supervising a resident physician is in any way different from that which he did in supervising a medical student. The evidence does not demonstrate that the clinical

supervision of a resident physician or director of the residency program is so unrelated and independent of the supervision of a medical student to create what the law recognizes as separate persons or legal entities.[5] *See Henning*, 143 Wis. 2d at 15.

■

¶ 33. We conclude that Dr. Broekhuizen's work at Sinai Samaritan as director of the OB-GYN residency program grew out of and was entirely dependent upon his employment as a faculty member with the U.W. Medical School. Accordingly, we reverse the decision of the court of appeals.

---

[5] The court of appeals summarily concluded that Dr. Broekhuizen was an employee/agent of Sinai Samaritan. *Riccitelli*, 221 Wis. 2d at 553–54. We do not believe that the record supports a conclusion that he was the servant of Sinai Samaritan subject to its right of control, and not the U.W. Medical School. *Cf. Kashishian v. Port*, 167 Wis. 2d 24, 33–34, 481 N.W.2d 277 (1992). It is also clear from the record that the doctor's roles as director of the residency program and as U.W. Medical School faculty member were not separate legal entities like the owner/lessor in *Rauch v. Officine Curioni, S.P.A.*, 179 Wis. 2d 539, 546, 508 N.W.2d 12 (Ct. App. 1993)(dual persona doctrine applied to Anderson, a majority stockholder who personally purchased and then leased a machine to the corporate employer). And this court has previously held that a medical malpractice suit could not be maintained against a state employee absent compliance with the notice requirement, even if the employee was acting as an apparent agent of the private hospital. *Kashishian*, 167 Wis. 2d at 50–51. Even if Dr. Broekhuizen was acting as an apparent agent for Sinai Samaritan, that does not change the fact that in directing the resident physicians he was acting in accordance with the affiliation agreement (thus, within the scope of state employment), and such "apparent agency" does not negate the notice requirements. *Id.* at 50.

## IV.

¶ 34. Dr. Riccitelli's remaining claims are that the application of the notice of claim provision, Wis. Stat. § 893.82(3), violates the due process and equal protection clauses of both the United States and Wisconsin Constitutions. *See* U.S. Const. amend. XIV; Wis. Const. art. I, § 1. The constitutionality of a statute is a question of law that we review de novo. *Castellani v. Bailey*, 218 Wis. 2d 245, 260, 578 N.W.2d 166 (1998). All legislative acts are presumed constitutional. *Yotvat*, 95 Wis. 2d at 363. A party challenging a statute has a heavy burden proving it is unconstitutional beyond a reasonable doubt. *State v. Hezzie R.*, 219 Wis. 2d 849, 863, 580 N.W.2d 660 (1998), cert. denied, 119 S. Ct. 1051 (1999).

¶ 35. Dr. Riccitelli's equal protection claim seems to be that the U.W. Medical School through its affiliation agreements has created a "class," of which Dr. Broekhuizen is a member, of otherwise private citizens who are now protected by Wis. Stat. § 893.82(3). According to Dr. Riccitelli, this classification was neither created nor intended by the Wisconsin legislature and has no rational basis.

¶ 36. In an equal protection claim, unless government action involves classifications based on a suspect class, such as race or alienage, or invidious classifications that arbitrarily deprive a class of persons of a fundamental right, the rational basis test applies. *State v. Post*, 197 Wis. 2d 279, 319, 541 N.W.2d 115 (1995), cert. denied, 117 S. Ct. 2507 (1997). Dr. Riccitelli concedes the rational basis test is applicable. In a rational basis analysis, "[t]he basic test is not whether some inequality results from the classification, but

whether. . .any reasonable basis [exists] to justify the classification." *Omernik v. State*, 64 Wis. 2d 6, 19, 218 N.W.2d 734 (1974) (footnotes omitted); *State v. McManus*, 152 Wis. 2d 113, 131, 447 N.W.2d 654 (1989).

¶ 37. As we explained in section III, the purpose of the notice of claim statute is to enable the governmental unit to investigate a claim against an employee, to avoid needless litigation, and to settle all reasonable claims. *Ibrahim*, 118 Wis. 2d at 726–27; *Mannino*, 99 Wis. 2d at 609.

> Investigation may disclose facts substantiating a defense to a claim or show that the employee is not entitled to immunity because the employee did not act within the scope of his or her employment. Classifications made between victims of public employee tortfeasors to protect public funds from unwarranted disbursements have a rational basis.

*Yotvat*, 95 Wis. 2d at 368–69.

¶ 38. Dr. Riccitelli seems to suggest, however, that the affiliation agreement between the Board of Regents of the University and Aurora is not sanctioned by the legislature, and should therefore eliminate the state's need for timely notice. We do not agree.

¶ 39. One of the missions of the University of Wisconsin system, which is governed by the Board of Regents, is to "develop human resources, to discover and disseminate knowledge, to extend knowledge and its application beyond the boundaries of its campuses." Wis. Stat. § 36.01(2). The Board of Regents is also directed to maintain, control and supervise the use of the University of Wisconsin Hospitals and Clinics for the purpose of "[a]ssisting health programs and personnel throughout the state and region in the delivery

of health care." Wis. Stat. § 36.25(13g)(b)4. The affiliation agreement with Sinai Samaritan effectuates these goals. We believe it is reasonable that faculty assigned under such an agreement are still protected as state employees.[6]

¶ 40. Dr. Riccitelli insists, however, that there is no rational basis for an absolute bar against claims. Especially in a case such as this, where "the Attorney General not only had 'actual notice' of the claim, Assistant Attorney General Flanagan participated in the proceedings in the prior case between the parties." Presumably the attorney general had "actual notice" and participated in Dr. Riccitelli's attempt to enjoin his termination because a notice of claim was timely filed. This second action is different from the first—it was filed two years later, after his termination, and it involved allegations of interference with a contract. Wisconsin Stat. § 893.82(3) requires a notice be filed with the attorney general within 120-days *of the event* causing the injury. Because the two cases involve two different alleged injuries, we believe it is clear that two separate notice of claims were necessary as well.

¶ 41. Based on the purposes of the notice of claim statute, and under the circumstances of this case, we conclude that there is a reasonable basis to require a party to file a notice of claim within 120 days of the event causing injury. We therefore conclude that Dr. Riccitelli's rights guaranteed under the equal protec-

---

[6] The liability portion of the affiliation agreements directs that the State of Wisconsin will provide liability protection for faculty participating in the U.W. Medical School education programs at Aurora institutions for acts within the scope of their employment.

tion clauses of the Wisconsin and United States Constitutions have not been violated.

¶ 42. Lastly, Dr. Riccitelli claims that the application of the notice of claim statute violates his right to due process. Due process requires that the means the legislature chooses bears a reasonable and rational relationship to the purpose or objective of the enactment. *State v. Jackman*, 60 Wis. 2d 700, 705, 211 N.W.2d 480 (1973). The clear policy of Wis. Stat. § 893.82(3) is to provide notice to the governmental unit in advance of any civil actions for damages based upon acts committed by a state employee. *Ibrahim*, 118 Wis. 2d at 726–27. The statute requires a notice of claim be filed within 120 days of the event causing injury. We conclude that § 893.82(3) is a rational method to further the legislative goal allowing investigation, and/or settlement of claims brought against state employees.

¶ 43. Dr. Riccitelli more specifically argues that he was denied substantive and procedural due process because he relied on Dr. Broekhuizen's sworn testimony regarding Dr. Broekhuizen's employment status. We have concluded in part III of this opinion that Dr. Broekhuizen was not testifying, in 1995, about *his* employment status or *his* employer; rather, the issue in the 1995 suit was the status of the OB-GYN residency program, and Dr. Riccitelli's status in that program. We also determined that any reliance by Dr. Riccitelli on Dr. Broekhuizen's testimony in concluding that Dr. Broekhuizen was not a state employee was unreasonable.

¶ 44. We also note that Dr. Riccitelli's first action was premised on his theory that Dr. Broekhuizen was a state employee. It is reasonable to presume that a

timely notice of claim was filed in the first case since the attorney general represented Dr. Broekhuizen, the U.W. Medical School, and the Board of Regents. Clearly if Dr. Broekhuizen was not a state employee, he would not have been represented by the attorney general, he would have had his own personal counsel. It is rather ironic that Dr. Riccitelli has alleged in one action that Dr. Broekhuizen was a state employee (subject to the notice of claim statute), but has claimed in this subsequent action that he was unaware that Dr. Broekhuizen was a state employee such that he needed to file a second notice of claim.

¶ 45. We conclude that Wis. Stat. § 893.82(3) is constitutionally valid and applies to the present case to bar Dr. Riccitelli's cause of action against Dr. Broekhuizen.

*By the Court.*—The decision of the court of appeals is reversed.

¶ 46. SHIRLEY S. ABRAHAMSON, C.J., did not participate.