COURT OF APPEALS
DECISION
DATED AND FILED

April 24, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1459**

Cir. Ct. No. 2023CV2875

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

---

JANE DOE,

   PLAINTIFF-APPELLANT,

V.

JAY C. LICK, D.O., AND KATHERINE M. GAST, M.D.,

   DEFENDANTS,

UNIVERSITY OF WISCONSIN HOSPITALS AND CLINICS AUTHORITY
AND THE INJURED PATIENTS AND FAMILIES COMPENSATION FUND,

   DEFENDANTS-RESPONDENTS.

---

APPEAL from an order of the circuit court for Dane County: NIA E. TRAMMELL, Judge. *Affirmed*.

Before Blanchard, Nashold, and Taylor, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Jane Doe appeals the circuit court's dismissal of her claim that the University of Wisconsin Hospitals and Clinics Authority (the Authority) intentionally discriminated against her in violation of Section 1557 of the federal Affordable Care Act.[1]   Doe alleges that the Authority discriminated against her by "endors[ing] and promot[ing]" the conduct of two doctors who Doe alleges provided her with inadequate medical care in connection with two surgeries.   The alleged discrimination was based on Doe presenting as a transgendered male and not as a gender-conforming female.   That is, Doe claims that she would have received adequate medical care if she had presented as a gender-conforming female and that the Authority intentionally discriminated against her because she did not present herself as a gender-conforming female.

¶2     The circuit court dismissed the claim against the Authority on the ground that Doe failed to sufficiently plead allegations that could show intentional discrimination by the Authority, including through vicarious liability based on the conduct of either or both of the two doctors.   The court determined that vicarious liability is barred by statute.   *See* WIS. STAT. § 233.17(2)(b) (2023-24) (preventing faculty or academic staff of the University of Wisconsin system from being deemed agents of the Authority for liability purposes).[2]

---

[1] We follow the parties and the circuit court in allowing the plaintiff to proceed in this litigation under the pseudonym Jane Doe and in referring to Doe using female-gendered pronouns.

[2] All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

¶3    We affirm the order dismissing Doe's claim against the Authority. For this reason, we also direct the circuit court to dismiss the action against the Wisconsin Injured Patients and Families Compensation Fund (the Fund) based on Doe's implied concession that this is appropriate in light of our decision affirming dismissal of the claim against the Authority.

## BACKGROUND

¶4    We begin by clarifying the status of Doe's claims in this case and the limited nature of this appeal.

¶5    Doe's operative complaint alleges that two medical doctors, Jay Lick and Katherine Gast, each committed medical malpractice and failed to obtain informed consent from Doe in connection with a surgery that each doctor performed.  Those claims remain pending in the circuit court and are not at issue in this appeal.

¶6    The operative complaint also makes one claim against the Authority, namely, that it intentionally discriminated against Doe in violation of Section 1557 of the Affordable Care Act, in connection with the allegedly inadequate care provided by Drs. Lick and Gast.[3]  The circuit court dismissed this claim and Doe now appeals that decision, as discussed in more detail below.

---

[3] Codified at 42 U.S.C. § 18116, Section 1557 of the Affordable Care Act prohibits any federally funded or administered health program or activity from engaging in discrimination.  The pertinent ground for discrimination in this case is Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681 et seq.), which forbids discrimination "on the basis of sex."  20 U.S.C. § 1681(a).  For ease of reference, we generally refer to Doe's claim against the Authority as the Section 1557 claim.  For purposes of this appeal, there is no dispute that, as Doe alleges, the Authority, as a recipient of federal funds that includes Medicaid funding, is subject to the nondiscrimination requirements of Section 1557.

¶7      In addition, the operative complaint names the Fund as a defendant, in order to preserve the possibility of a claim that the Fund will be obligated to pay a portion of damages that may be awarded to Doe.  After Doe filed her appeal of the order dismissing her claim against the Authority, the Fund took the following position in this court: If we affirm the circuit court's decision dismissing the Authority, then there would be no remaining Fund participant in this case, under the terms of WIS. STAT. § 655.27, and therefore the Fund could not have any obligations in this case and it should be dismissed as a party.  We ordered the clerk of this court to amend the caption to reflect that the Fund is a respondent in this appeal, and the Fund has filed a brief taking the same position that the Fund should be dismissed from this case if this court affirms the circuit court's decision on this issue.

¶8      Doe concedes through silence in her reply brief that the Fund is correct.  *See United Co-op. v. Frontier FS Co-op.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (appellant's failure to respond in reply brief to an argument made in a response brief may be taken as a concession).  Accordingly, given the conclusion that we reach regarding the Authority which is explained below, we direct the circuit court to dismiss the Fund from this action.[4]

---

[4] We call to the attention of the Fund's counsel that the Fund's appellate brief does not comply with WIS. STAT. RULE 809.19(8)(bm), which addresses the pagination of appellate briefs. *See* RULE 809.19(8)(bm) (providing that, when paginating briefs, parties should use "Arabic numerals with sequential numbering starting at '1' on the cover").  This rule has been amended. *See* S. Ct. Order 20-07, 2021 WI 37, 397 Wis. 2d xiii (eff. July 1, 2021).  The reason for the amendment is that briefs are now electronically filed in PDF format, and are electronically stamped with page numbers when they are accepted for efiling.  As our supreme court explained when it amended the rule, the new pagination requirements ensure that the numbers on each page of a brief "will match ... the page header applied by the eFiling system, avoiding the confusion of having two different page numbers" on every page of a brief.  *See* Supreme Court cmt., 2021, RULE 809.19.

¶9    We now summarize allegations in the operative complaint pertinent to the only claim at issue in this appeal, Doe's Section 1557 claim against the Authority.

¶10    Doe "is currently, and has always been, female sexed." In March 2019, when Doe was 19, she "identified with a male gender identity" and was receiving "hormone therapy" involving testosterone. At that time, Doe consulted with Dr. Lick, who was then an "employee or agent" of the Authority and "a physician employed by [the] University of Wisconsin School of Medicine and Public Health." Doe was experiencing "lower genital tract bleeding and uterine pain." The two discussed the possibility of Lick performing a hysterectomy on Doe. After a pre-operative exam, Lick performed a hysterectomy on Doe in August 2019, removing her uterus and both of her fallopian tubes.

¶11    In February 2021, when Doe was 21, she met with Dr. Gast to discuss a potential double mastectomy. Like Lick, Gast was an "employee or agent" of the Authority and "a physician employed by [the] University of Wisconsin School of Medicine and Public Health." Following a pre-operative visit, Gast performed a "bilateral periareolar mastectomy with masculinization of the nipple areolar complex" in August 2021.

¶12    Doe alleges that both doctors discriminated against her "on the basis of her sex" and "sex-stereotyped" her "due to" her "nonconformity with her natal sex." She alleges that the doctors "adhered to a different standard of care" than each would have used if Doe had presented with a conforming gender identity— that is to say, as a woman. The two doctors "recklessly, if not intentionally, overlooked or ignored her psychological history to justify their approach to

5

treating her, a young woman confused about her gender identity and experiencing current and known mental distress."

¶13    As to the Authority, Doe alleges it: promoted "a different standard of care for individuals based on their sex status"; encouraged and promoted "sex-stereotyping," while Doe was "under the care of" the Authority; and "endorsed and promoted treating [Doe] with a different standard of care based solely on [Doe's] sex status in lieu of her individual, specific medical needs." Doe alleges that the Authority failed to require that the two doctors use an appropriate level of "gatekeeping" in connection with each surgery.

¶14    Doe further alleges that, in or around November 2022, Doe stopped taking testosterone and that this "marked" her "intent to detransition" from a male gender identity to a female gender identity, at least "as much as she possibly could despite" the "irreversible" effects of the hysterectomy and breast surgery.

¶15    Doe acknowledges that she must prove "intentional sex discrimination" to state a claim against the Authority under Section 1557. As stated, she alleges that the Authority discriminated against her by "endors[ing] and promot[ing]" the conduct of Drs. Lick and Gast in allegedly providing her with inadequate treatment because she presented as a transgendered male, and not as a gender-conforming female.

¶16    The circuit court granted the Authority's motion to dismiss on the ground that Doe's operative complaint fails to contain allegations raising the reasonable inference that the Authority itself intentionally discriminated against Doe through the provision of direct patient care, or that either of the two doctor defendants were employees of the Authority, which the court indicated would be the only way for Doe to overcome the bar to the Authority's liability contained in

WIS. STAT. § 233.17(2)(b). We sometimes refer to § 233.17(2)(b) as "the liability-limiting provision." Doe appeals.

## DISCUSSION

¶17    For the first time on appeal, Doe argues that the federal Supremacy Clause bars the application of the liability-limiting provision to her allegations because that provision conflicts with the federal Section 1557 claim. Put differently, Doe's new argument on appeal is that Section 1557 preempts the application of the liability-limiting provision on the allegations here.

¶18    We begin by explaining why we conclude that Doe's complaint fails to state a claim, without taking into account Doe's Supremacy Clause argument. Then we explain why we deem Doe's Supremacy Clause argument to be forfeited and accordingly do not address it.

### I.    Failure to State a Claim

#### A.    Motion to Dismiss Standards

¶19    "'A motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint.'" ***Data Key Partners v. Permira Advisers LLC***, 2014 WI 86, ¶19, 356 Wis. 2d 665, 849 N.W.2d 693 (quoted source omitted). We review de novo the circuit court's determination that Doe's complaint fails to state a claim. ***Id.***, ¶17.

¶20    "[A] complaint must plead facts, which if true, would entitle the plaintiff to relief" based on applicable law. ***Id.***, ¶21. For purposes of our analysis, we accept as true all allegations of fact that are well-pleaded in Doe's operative complaint, as well as all reasonable inferences arising from those allegations. *See*

*id.*, ¶19. A complaint states a claim if proof of the facts that it pleads would satisfy each element of a cause of action. *See id.*, ¶21. Mere "'labels and conclusions'" in a complaint are to be ignored, as are mere "'formulaic recitation[s] of the elements of a cause of action.'" *Id.*, ¶37 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

### B. The Authority and the Liability-Limiting Provision

¶21 The Authority is a "political corporation" that was created by the legislature, as reflected in WIS. STAT. ch. 233, but unlike some entities created by the legislature, the Authority "does not receive general purpose revenue from the state" and it "can sue and be sued." *Rouse v. Theda Clark Med. Ctr., Inc.*, 2007 WI 87, ¶¶31-32, 302 Wis. 2d 358, 735 N.W.2d 30; *see also* WIS. STAT. § 233.02(1) ("There is created a public body corporate and politic to be known as the 'University of Wisconsin Hospitals and Clinics Authority.'"). The Authority's statutory purposes include providing health care, instructing future health care providers, and promoting health. *Rouse*, 302 Wis. 2d 358, ¶31.

¶22 As this court explained in *Suchomel v. University of Wis. Hosp. & Clinics*, 2005 WI App 234, 288 Wis. 2d 188, 708 N.W.2d 13, the legislature's creation of the Authority altered relationships among individuals and entities related to the operation of, and liabilities of, the hospital and clinics operated by the University of Wisconsin:

> Prior to the formation of the Authority, [the University of Wisconsin Hospital and Clinics] was part of the University of Wisconsin-Madison, a state agency, and all liability arising from faculty and the hospital was assumed by the state pursuant to WIS. STAT. §§ 893.82 and 895.46. *See Riccitelli v. Broekhuizen*, 227 Wis. 2d 100, 107, 595 N.W.2d 392 (1999). The state no longer assumed liability for the Hospital after the Hospital severed its relationship with the University. However, the state

> retained liability for the faculty and other University staff and students under WIS. STAT. § 233.17.

*Suchomel*, 288 Wis. 2d 188, ¶25.

¶23 Most central to the dispute here, the legislature through WIS. STAT. § 233.17 limited the potential liability of various persons and entities as their conduct relates to the Authority. We now quote the entire statute, although our focus is on the liability-limiting provision, subpart (2)(b).

> (1) Neither the state, any political subdivision of the state nor any officer, employee or agent of the state or a political subdivision who is acting within the scope of employment or agency is liable for any debt, obligation, act or omission of the authority.
>
> (2)(a) No officer, employee or agent of the board of regents, including any student who is enrolled at an institution within the University of Wisconsin System, is an agent of the authority unless the officer, employee or agent acts at the express written direction of the authority.
>
> (b) Notwithstanding par. (a), no member of the faculty or academic staff of the University of Wisconsin System, acting within the scope of his or her employment, may be considered, for liability purposes, as an agent of the authority.

¶24 Under the liability-limiting provision, academic staff and faculty members employed by the University of Wisconsin System are considered to be state employees. *Suchomel*, 288 Wis. 2d 188, ¶¶26-28. When these persons act within the scope of their employment, they may not be deemed to be agents of the Authority. *Id.* This rule barring liability through an agency theory "unambiguously encompasses all forms of agency, which necessarily includes actual, apparent, or ostensible." *Id.*, ¶29.

¶25 Explaining further, at the same time that the legislature created the Authority, it decided that the state would no longer take on liability for the

University of Wisconsin Hospital, which became part of the Authority, but the state retained liability for the faculty and other university staff and students under the terms outlined in WIS. STAT. ch. 233. *See* WIS. STAT. § 233.17; *Suchomel*, 288 Wis. 2d 188, ¶¶25-26. The result is that health care providers at the hospital who are faculty, staff, or students of the university (those covered by the liability-limiting provision) are state employees, but employees of the Authority are not state employees and the vicarious liability bar does not apply to their employment conduct. *See* § 233.17; *Suchomel*, 288 Wis. 2d 188, ¶¶25-26.

### C.     Analysis

¶26    Assuming the truth of all of the allegations in the operative complaint, we conclude that the complaint does not state a claim that the Authority discriminated against Doe. Instead, at best, the complaint may allege ways in which the Authority might be vicariously liable for allegedly discriminatory conduct of the doctors, which is a form of potential Authority liability barred by the liability-limiting provision.[5]

¶27    We now explain further and address the contrary argument by Doe. The operative complaint alleges in pertinent part the following: each doctor was "an employee … of" the Authority; the doctors "were a part of [the Authority's] provision of a [f]ederally funded program or activity"; and the doctors "provided care under, because of, or pursuant to [the Authority's] promotion and endorsement of a gender-affirming care program." Given these allegations, Doe contends, the complaint alleges that the doctors were more than mere agents of the

---

[5] We do not address the parties' arguments about alternative grounds offered by the Authority in support of its motion to dismiss.

Authority, because they were part of the Authority's "organization," and "the entire organization is subject to the anti-discrimination requirements of Section 1557." If this is true, the argument goes, it is immaterial whether the liability-limiting provision establishes that the doctors are not "agents" of the Authority, because the complaint alleges a theory of direct Authority liability.

¶28 But, as the circuit court pointed out, the substance of Doe's position (whatever the precise framing or nomenclature used) rests on a mere assertion in the complaint of a legal conclusion. The legal conclusion would be that, at all relevant times, the doctors each had a relationship with the Authority that qualified as an employee-employer relationship. The problem is that Doe fails to provide any factual allegations to support that assertion. The operative complaint affirmatively alleges that each of the two doctors was employed by the University of Wisconsin School of Medicine and Public Health. On its face, this evokes the liability-limiting provision. Yet, despite the doctor's employment by the school, the operative complaint is silent when it comes to the assertion that the doctors were also in fact employed by the Authority in a manner that could render the provision inapplicable. In other words, the operative complaint does not allege facts sufficient to establish that the doctors were employed by the Authority, which is necessary for Doe to state a claim. *See **Keeler v. LIRC***, 154 Wis. 2d 626, 631-32, 453 N.W.2d 902 (Ct. App. 1990) (in addressing undisputed facts regarding whether an individual was an employee for unemployment compensation purposes, what would ordinarily be a mixed question of fact and law could be addressed as a conclusion of law).

¶29 The allegations in the operative complaint that Doe relies on are not allegations of fact regarding the existence of an employment relationship between the doctors and the Authority. The allegations that Doe now cites include that the

11

Authority "approved, endorsed, and promoted" allegedly discriminatory conduct by the doctors and that it did not "require" the doctors to use "appropriate gatekeeping." In her arguments on appeal, Doe does not provide legal support for the assertion that this factual context raises a reasonable inference of an employment relationship, and we reject this as an argument.

¶30 What remains would be the theory that the Authority could have vicarious liability based on the conduct of the doctors because, when they interacted with Doe, it is reasonably inferable that they were acting as agents of the Authority. For example, the broad allegation that the Authority engaged in "promotion and endorsement of a gender-affirming care program" could evoke the concept that the doctors were acting as agents of the Authority in all their relevant conduct. This is precisely what is barred by the liability-limiting provision.

¶31 In support of a theory of liability for the Authority, Doe cites a federal district court opinion addressing a lawsuit that involved alleged conduct outside Wisconsin that has nothing to say about the specific nature of the Authority or the meaning of Wisconsin's liability-limiting provision. *See Rumble v. Fairview Health Servs.*, No. 14-cv-2037, 2015 WL 1197415, at \*14 (D. Minn. Mar. 16, 2015) (explaining it was sufficient to state a claim for a violation of Section 1157 by a hospital to allege that activity of a group of emergency physicians associated with the hospital was part of a federally funded program, pending discovery that could reveal that federal dollars actually supported the work of the emergency physicians). *Rumble* does not shed light on the issues here because it does not address the liability-limiting provision.

¶32 Doe also asserts on appeal that her claim against the Authority is "a straightforward claim under Section 1557" that "is independent from her state law

12

claims against the doctors," but she fails to support that assertion. The construction of the operative complaint that is most favorable to Doe is only that the Authority has liability based on the conduct of its agents, the two doctors.

## II.    Forfeiture of Supremacy Clause Argument

¶33    Doe's forfeited argument rests on the Supremacy Clause of the federal constitution. *See* U.S. CONST., art. VI, cl. 2 (the laws of the United States "shall be the supreme Law of the Land; ... any Thing in the Constitution or Laws of any state to the Contrary notwithstanding"); *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008) (state laws that conflict with federal law are "'without effect'" (quoted source omitted)). Doe argues that the Supremacy Clause bars the application of the liability-limiting provision to the allegations here because it conflicts with the federal Section 1557 claim. Put differently, Doe's argument is that Section 1557 preempts the application of the liability-limiting provision under the facts alleged here. But Doe made no reference to the Supremacy Clause or the concept of preemption in the circuit court, and we decline to overlook this complete failure to preserve an "as applied" constitutional challenge to a state statute.

### A.    Legal Standards

¶34    Forfeiture is a rule of judicial administration, under which appellate courts may, but are not obligated to, address an argument or theory that an

appellant raises for the first time on appeal.[6] ***Townsend v. Massey***, 2011 WI App 160, ¶¶22-23, 338 Wis. 2d 114, 808 N.W.2d 155. When a legal argument or theory is raised by an appellant for the first time on appeal in a way in which the reversal sought on that ground would "blindside" the circuit court, this counsels against entertaining the argument or theory on appeal. ***Id.***, ¶25. The forfeiture rule creates incentives for parties to timely apprise both circuit courts and opposing parties of specific arguments and theories, to foster the interests of fairness and efficient use of judicial resources. ***Id.***, ¶26. Our supreme court has explained:

> The purpose of the "forfeiture" rule is to enable the circuit court to avoid or correct any error with minimal disruption of the judicial process, eliminating the need for appeal. The forfeiture rule also gives both parties and the circuit court notice of the issue and a fair opportunity to address the objection; encourages attorneys to diligently prepare for and conduct trials; and prevents attorneys from "sandbagging" opposing counsel by failing to object to an error for strategic reasons and later claiming that the error is grounds for reversal.

***State v. Ndina***, 2009 WI 21, ¶30, 315 Wis. 2d 653, 761 N.W.2d 612 (footnotes omitted).

### B.   Additional Background

¶35   Additional background is required in order to understand Doe's position on the forfeiture issue.

---

[6] The Authority uses the term "waived" in this context, but our supreme court has explained that the correct term for the failure to make an argument, as opposed to intentionally giving it up, is forfeiture. *See **State v. Ndina***, 2009 WI 21, ¶¶28-30, 315 Wis. 2d 653, 761 N.W.2d 612 ("forfeiture" is the failure to make the timely assertion of a right; "waiver" is the intentional relinquishment or abandonment of a known right).

¶36 Doe's initial complaint and first amended complaint both included, in addition to Doe's Section 1557 claim against the Authority, a separate claim against the Authority based on a respondeat superior theory. Respondeat superior is an agency theory of vicarious liability, under which an employer can be held liable for negligent acts of its employees when they act within the scope of their employment. *See Warr v. QPS Cos., Inc.*, 2007 WI App 14, ¶14, 298 Wis. 2d 440, 728 N.W.2d 39 (2006); *L.L.N. v. Clauder*, 209 Wis. 2d 674, 698 n.21, 563 N.W.2d 434 (1997) (vicarious liability is based on the agency relationship of "master" and "servant"). Thus, in denominating this claim "respondeat superior," Doe's earlier complaints signaled that her respondeat superior theory was based entirely on the alleged conduct of the two doctors in treating Doe, which Doe claimed rendered the Authority "negligent in its care and treatment" of Doe.

¶37 On December 21, 2023, the Authority filed a brief in support of a motion to dismiss. This included an argument that the respondeat superior claim against the Authority must be dismissed under the liability-limiting provision:

> [Doe] is seeking to hold [the Authority] vicariously liable for alleged medical negligence by Drs. Lick and Gast. Such claim fails under [Wis. Stat. §] 233.17(2)(b). As a matter of law, [the Authority] cannot be liable under an agency theory for the care provided by a state-employed faculty member of the University of Wisconsin System; thus, [Doe's] claim that [the Authority] is liable for alleged negligence by Dr. Lick or Dr. Gast fails to state a claim upon which relief may be granted.

We pause to note that this stakes out an unambiguous position that Doe was barred from pursuing any "agency theory" of liability against the Authority, even though the Authority specifically applied the liability-limiting provision to Doe's state law-based negligence claims. This pleading also included the following passage: "Dr. Lick and Dr. Gast were faculty at the School of Medicine and were state

employees. Plaintiff has alleged that they were acting as physicians at the time of the allegedly negligent care; accordingly, [the Authority] cannot be held liable for their conduct under a theory of respondeat superior or agency."

¶38 Doe did not file a response to the Authority's argument that a theory of vicarious liability against the Authority is defeated by the liability-limiting provision. But on January 18, 2024, Doe filed a second amended complaint (the currently operative complaint). *See* WIS. STAT. § 802.09(1); ***Schuett v. Hanson***, 2007 WI App 226, ¶¶11-12, 305 Wis. 2d 729, 741 N.W.2d 292 (when amended complaint "incorporates no part of" earlier complaint, amended complaint "supplants" the earlier complaint, rendering it "a nullity"). The operative version omits the language of the respondeat superior claim against the Authority that was presented in the earlier complaint, but the operative complaint retains the Section 1557 claim against the Authority.

¶39 On March 1, 2024, the Authority filed a pleading renewing its motion to dismiss, now directed at Doe's second amended complaint. In this pleading, the Authority stated that, at a status conference on January 22, 2024, Doe "acknowledged" that she "is no longer alleging respondeat superior liability against" the Authority. The March 1 pleading further explained that the Authority was relying on its December 21 brief and adding a supplemental brief. The Authority took the position that its argument against vicarious liability based on the liability-limiting provision contained in its December 21 brief would no longer be relevant. This reflected the Authority's view that Doe's removal of a respondeat superior claim for medical negligence from the operative complaint meant that Doe was no longer pursuing any theory of vicarious liability against the

Authority, including the Section 1557 discrimination claim.[7] The focus of the Authority's supplemental brief was Doe's alleged failure to plead facts that could support a claim of intentional discrimination by the Authority.

¶40 On April 1, 2024, Doe filed a memorandum of law in opposition to the renewed motion to dismiss, which contained several arguments to try to show how intentional discrimination by the Authority could be inferred from the operative complaint, but again making no reference to the Supremacy Clause. This memorandum made references to the Authority that could be construed as being based on a theory of vicarious liability, to support the only remaining claim against the Authority under Section 1577. This included reference to the concepts that care provided by the two doctors was provided by the Authority and that the actions of the two doctors were actions of the Authority.

¶41 On April 16, 2024, the Authority filed a reply brief. The Authority observed in part that some of the arguments that Doe made in her April 1 memorandum appeared to rely on a theory of vicarious liability. To counter that, the Authority again invoked the liability-limiting provision as a bar against a theory of vicarious liability.

---

[7] The Authority's March 1, 2024 pleading appeared to treat the concept of vicarious liability as interchangeable with the phrase respondeat superior. Case law at times treats respondeat superior as one type of vicarious liability, specifically relating to holding "non-negligent employer[s]" liable for their employees' actions. *See Lewis v. Physicians Ins. Co. of Wis.*, 2001 WI 60, ¶12, 243 Wis. 2d 648, 627 N.W.2d 484. Consistent with the Authority's understanding, however, respondeat superior theory has also been used to describe agent-based liability in the context of other kinds of claims, including vicarious liability for statutory claims. *See Alberte v. Anew Health Care Servs., Inc.*, 2000 WI 7, ¶¶29-30, 34, 232 Wis. 2d 587, 605 N.W.2d 515 (explaining that certain language in state and analogous federal statutes clarified that "employer liability" under the statutes "should be limited by respondeat superior principles").

¶42    Over the course of nearly three months, between April 16, when the Authority filed this reply brief, and July 3, 2024, when the circuit court issued its decision, neither side addressed vicarious liability or the liability-limiting provision, and neither side referred to the Supremacy Clause. During this time, Doe did not file or seek leave to file any additional briefing or pleadings, nor did she request an oral argument.

¶43    As referenced above, the circuit court relied in substantial part on the liability-limiting provision in its July 3 decision dismissing the only claim against the Authority, based on Section 1557.

¶44    Doe did not file a motion for clarification or reconsideration of the July 3 decision.

¶45    In her opening brief on appeal, for the first time in this litigation, Doe refers to the Supremacy Clause. She argues that the circuit court erred by falling to recognize that, under an "as-applied" application of the Supremacy Clause, the liability-limitation provision cannot be permitted to bar Doe's Section 1557 claim against the Authority.

C.    **Analysis**

¶46    We conclude that it would sandbag the Authority for us to entertain Doe's new argument on appeal that the liability-limitation provision is unconstitutional as applied to the facts alleged. We also conclude that it would blindside the circuit court if we were to reverse on this ground. All of the incentives discussed in *Ndina*, quoted above, would be undermined if we were to reverse based on this new-to-the-appeal argument, an as-applied constitutional challenge to a state statute.

¶47    Doe argues that she did not make any argument based on the Supremacy Clause because she "had no reason" to do so given the positions taken by the Authority before the filing of the operative complaint. However, as the additional background above shows, and as we explain below, Doe had multiple opportunities to understand clearly that any potential Supremacy Clause argument was relevant to resolving the Authority's motion.

¶48    The Authority's December 21 brief called for a response from Doe, if Doe had a response, regarding whether the application of the liability-limiting provision based on the facts alleged here by Doe would violate the Supremacy Clause. The Authority staked out a clear position based on the liability-limiting provision. Although the Authority initially focused on applying that provision to vicarious liability for state-law-based medical negligence claims, the Authority's arguments clearly reflected the position that the statute barred *all* vicarious liability for UW Hospital employees. And, nothing in the liability-limiting provision qualifies its application to only state law claims. At no point did Doe respond to explain that the liability-limiting provision would not apply to all of her claims, based on the alleged facts, due to application of the Supremacy Clause.

¶49    In its March 1, 2024 pleading, the Authority construed Doe's decision to file the operative complaint in lieu of providing any argument contrary to its motion as an acknowledgment by Doe that she was not relying on any theory of vicarious liability. Instead, the Authority had every reason to believe that Doe would rely on other theories of the Authority's direct liability under her only remaining claim against the Authority, the Section 1557 claim. Doe may intend to argue that the Authority was unreasonable in taking this position, because her withdrawal of the respondeat superior claim involved only vicarious liability for a state-law based medical negligence claim. Whatever the merits of this potential

contention, it remains the case that the Authority's statement in the March 1 pleading that it would no longer rely on the liability-limiting provision was clearly tied to the Authority's position that Doe was no longer bringing any claim based on a theory of vicarious liability. Thus, it is not reasonable for Doe to attempt to excuse her forfeiture now based on the Authority's March 1 statement.

¶50    Doe argues that the Authority pulled a "bait-and-switch" when—after stating on March 1 that vicarious liability was off the table—it argued in its April 16 reply brief that the liability-limitation provision bars its liability under a vicarious liability theory for all claims, including the Section 1557 claim. But Doe fails to support the bait-and-switch label. It was Doe who chose to amend the complaint instead of opposing the Authority's initial motion to dismiss, effectively leaving her with one guaranteed opportunity to brief the issue, in the circuit court, of whether the liability-limiting provision could apply to her federal claims. It was Doe who failed to use that brief to anticipate how the Authority—after learning that Doe did after all rely on a theory of vicarious liability to support her federal claim—would likely seek to renew the argument that the liability-limiting provision bars all pertinent forms of vicarious liability after the Authority had already explicitly relied on the statute.

¶51    The Authority's reply brief in the circuit court settles the forfeiture issue. That is, even if we were to assume that Doe was reasonable in failing to anticipate the need to invoke the Supremacy Clause at any time *before* the Authority filed its reply brief in the circuit court, this would not justify her complete silence on this issue at any time *after* the Authority squarely raised the issue in that brief.

20

¶52     Doe now suggests that, if only the circuit court had provided the parties with an opportunity for oral argument before issuing its written decision, then Doe would have had an opportunity to respond to the Authority's April 16 reply brief. One problem with this suggestion is that it is unclear that Doe would have relied on the Supremacy Clause at an oral argument. If Doe were primed to make such an argument in advance of the written decision, why was there no additional filing or request for oral argument? Another problem is that the circuit court was not obligated to sua sponte schedule an oral argument. Further, Doe does not indicate that there has been any change in the facts or law since the circuit court proceedings that could justify her failure to pursue in the circuit court—even briefly—an "as applied" constitutional challenge to a state statute.

¶53     Doe also asserts that this court should address her Supremacy Clause argument despite forfeiture "because it is central to the circuit court's order dismissing Doe's Section 1557 claim." But the topic could hardly be central to the order when it was not mentioned by any party or the circuit court. By "central," Doe may mean that the argument could be dispositive on the issue. If so, that does not alter the analysis. Many forfeited arguments are potentially dispositive of one or more properly raised issues on appeal.

¶54     Doe argues that we should exercise our discretion to address her Supremacy Clause argument because "the issue raised is a legal question, the parties have thoroughly briefed the issue, and there are no disputed issues of fact." *See Estate of Miller v. Storey*, 2017 WI 99, ¶67, 378 Wis. 2d 358, 903 N.W.2d 759. We decline to take this step. Doe's complete failure to raise this argument in the circuit court has deprived this court of the robust development that we generally look for in addressing an issue of this nature.

## CONCLUSION

¶55 For these reasons, we affirm the circuit court's dismissal of the Section 1557 claim against the Authority.

*By the Court*.—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.